IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDERL EDNA MOORE, and
TIARA WILLIS-PITTMAN,

    Plaintiffs,

v.

RUTH JOHNSON, in her official capacity as
Secretary of State, and CATHY M. GARRETT,
in her individual capacity and in her official
capacity as Wayne County Clerk,

    Defendants.
_____/

Hon.

Case No.

CLAIM OF
UNCONSTITUIONALITY

Michael J. Steinberg (P43085)
Kary L. Moss (P48759)
Brooke A. Tucker
Daniel S. Korobkin (P72842)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, Michigan 48201
(313) 578-6814
msteinberg@aclumich.org
kmoss@aclumich.org
btucker@aclumich.org

Mary Ellen Gurewitz (P25724)
Sachs Waldman, PC
Cooperating Attorney, ACLU
  Fund of Michigan
2211 East Jefferson Ave., Suite 200
Detroit, MI 48207
(313) 965-3464
megurewitz@sachswaldman.com

_____/

**COMPLAINT FOR DECLARATORY, INJUNCTIVE
AND OTHER RELIEF**

# INTRODUCTORY STATEMENT

1. Plaintiffs file this civil rights action to challenge the constitutionality of the Michigan statute that requires individuals to be registered voters in order to circulate nominating petitions to place candidates for partisan office on the primary election ballot. M.C.L. § 168.544c(3).

2. This provision is being relied upon by Defendant Wayne County Clerk Cathy Garrett to invalidate the signatures of hundreds of registered voters who were seeking to nominate Congressman John Conyers as the Democratic candidate for United States Representative of Michigan's 13th Congressional District of Michigan and to deny Congressman Conyers a place on the August primary ballot for that position.

3. According to a report released by the Wayne County Clerk's office staff on May 9, 2014, Congressman Conyers' re-election campaign submitted 1,236 valid signatures of registered voters on nominating petitions for the August primary -- 236 more than the 1000 valid signatures needed. However, 644 signatures were subsequently disqualified after the Clerk's staff considered a challenge to the nominating petitions and concluded that, at the time the signatures were collected, some of the petition circulators were not registered voters.

4. Plaintiffs Ederl Edna Moore and Tiara Willis-Pittman are currently registered voters in the 13th Congressional District who are ardent supporters of

Congressman Conyers and who will vote for Congressman Conyers in the August primary if he appears on the ballot.

5. Ms. Moore, who is 72 years old, worked on Congressman Conyers' first campaign for the U.S. House of Representatives in 1964 and has supported him ever since.

6. Plaintiff Tiara Willis-Pittman circulated nominating petitions for Congressman Conyers and collected more than 90 signatures in March, 2014. Before circulating petitions, Ms. Willis-Pittman filled out a voter registration application and believed that she was registered to vote. However, the County Clerk ultimately determined that her application had been either untimely filed or untimely processed and that Ms. Willis-Pittman was not, in fact, a registered voter at the time she collected signatures. Consequently, the Clerk's staff concluded that all of the signatures collected by Ms. Willis-Pittman were invalid.

7. The United States Supreme Court, the United States Court of Appeals for the Sixth Circuit and courts across the country have struck down voter registration requirements for petition circulators because such requirements violate the First Amendment right to freedom of speech and freedom of political association.

8. Plaintiffs seek a declaration that the registered voter requirement for petition circulators, set forth in M.C.L. § 168.544c(3), violates the First

3

Amendment, both on its face and as applied in this instance, and they seek an injunction against further enforcement of the provision. They also seek an injunction ordering Defendants to refrain from invalidating signatures on Congress Conyers' nominating petitions on the ground that the petition circulators were not registered to vote.

## JURISDICTION AND VENUE

9. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because this is a civil action seeking relief for the deprivation of rights secured by the United States Constitution.

10. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b), because it is the judicial district where Plaintiffs and Defendants are located or reside, and where the majority of the events and omissions giving rise to this action occurred.

## PARTIES

11. Plaintiff Ederl Edna Moore is a resident of the City of Detroit, which falls within the Eastern District of Michigan.

12. Plaintiff Tiara Willis-Pittman is a resident of the City of Detroit, which falls within the Eastern District of Michigan.

13. Defendant Cathy M. Garrett is sued in her individual capacity and in her official capacity as Wayne County Clerk. Upon information and belief, she resides within the Eastern District of Michigan.

14. Defendant Ruth Johnson is sued in her official capacity as the Michigan Secretary of State. As Secretary of State, she serves as Michigan's chief election officer. M.C.L. § 168.21.

15. At all times relevant to this complaint, Defendants were acting under color of law.

## GENERAL FACTUAL ALLEGATIONS

### The Challenged Statute

16. Under state law, the circulator of a nominating petition to place a candidate on the primary election ballot must be a registered voter. M.C.L. § 168.544c(3) provides, in part:

> At the time of circulation, the circulator of a petition shall be a registered elector of this state. At the time of executing the certificate of circulator, the circulator shall be registered in the city or township indicated in the certificate of circulator on the petition.

17. Until recently, M.C.L. § 168.544c(3) (hereafter, "Section 544c(3)") also required petition circulators to be Michigan residents in order to circulate referendum petitions, initiative petitions, and petitions to amend the Michigan Constitution. In February 2014, the Humane Society Legislative Fund and other plaintiffs, represented by lawyers with the American Civil Liberties Union Fund of

Michigan, filed a lawsuit challenging the residency requirement for petition circulators as a violation of the First Amendment. (E.D. Mich. No. 14-10601).

18.     On April 3, 2014, the Michigan legislature amended Section 544c(3) to permit individuals who were not registered to vote and who were not residents of Michigan to circulate referendum petitions, initiative petitions, and petitions to amend the Michigan Constitution – thereby rendering the Humane Society case moot. The amendment, which was given immediate effect, also eliminated the requirement that petition circulators be registered to vote in order to circulate qualifying petitions on behalf of independent candidates wishing to run for many statewide offices, as set forth in M.C.L. § 168.590b(4), and to circulate petitions to form a new political party, M.C.L. § 168.685.  See 2014 PA 94.

19.     Despite the amendment of Section 544c(3) to eliminate the voter registration and/or residency requirement for petitioners circulating ballot initiative and referendum petitions and qualifying petitions for some statewide offices, the Michigan legislature inexplicably left in place the Section 544c(3) requirement that persons circulating nominating petitions for primary elections for other state offices be registered voters.

20.     The U.S. Supreme Court has already spoken clearly on this issue, striking down voter registration requirements for initiative petition circulators in *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182

(1999). Courts across the country, including the U.S. Court of Appeals for the Sixth Circuit, have held that the Court's reasoning in *Buckley* applies with full force to circulators of candidate nominating petitions. *See Nader v. Blackwell*, 545 F.3d 459, 475-76 (6th Cir. 2008); *Lerman v. Bd. of Elections*, 232 F.3d 135, 148 (2d Cir. 2000); *Krislov v. Rednour*, 226 F.3d 851, 861-62 (7th Cir. 2000); *see also Nader v. Brewer*, 531 F.3d 1028, 1035-36 (9th Cir. 2008); *Bogaert v. Land*, 675 F. Supp. 2d 742, 750-51 (W.D. Mich. 2009).

**Congressman John Conyers' Nominating Petitions**

21. Congressman Conyers has represented parts of Detroit and the surrounding area since 1965, serving 24 two-year terms.

22. Congressman Conyers currently represents Michigan's 13th Congressional District, which includes large parts of Detroit as well as several cities in western Wayne County, including Romulus, Inkster, Garden City, Dearborn Heights, Wayne, Redford, Melvindale, Ecorse and River Rouge.

23. Congressman Conyers is currently the second-longest serving incumbent member of Congress and if he is re-elected in November, he will be the longest serving incumbent member of Congress. He has served as the Chairman of the House Judiciary Committee and is its ranking member.

24. Under state law, Congressman Conyers was required to submit 1000 valid signatures of registered voters in the 13th Congressional District on the

nominating petition to qualify for the August primary ballot. (See Exh. A, 5/9/14 Staff Report of Wayne County Clerk's Office.)

25. The Conyers campaign submitted more than 2000 signatures to the Wayne County Clerk, Defendant Cathy M. Garrett. (*Id.*) Because all of the 13th Congressional District lies in Wayne County, the Wayne County Clerk is the official with whom the nominating petitions are filed, M.C.L. § 168.133, and who makes the determination as to the validity of the petition signatures and the sufficiency of the petition. M.C.L. § 168.552.

26. The Wayne County Clerk's staff's initial review of the signatures resulted in a determination that 1,193 signatures were valid and the second review resulted in a determination that 1,236 signatures were valid. (*Id.*; *also see* Exh. B, 4/30/14 letter from the Office of the County Clerk to Congessman Conyers stating that he submitted a sufficient number of signatures to be placed on the primary ballot.)

27. A challenge was filed to Congressman Conyers' nominating petitions on the ground that a large number of signatures should be invalidated because the petition circulators were not registered to vote at the time they circulated the petitions.

28. The Wayne County Clerk's staff issued a report on May 9, 2014 finding that five circulators were not properly registered to vote. (Exh. C, "Rep.

John Conyers falls far short of signatures needed for August ballot, clerk says," by Kathleen Gray and Todd Spangler, Detroit Free Press, May 8, 2014.)

29. Upon information and belief, most, if not all of the five petition circulators had filled out voter registration forms before circulating the petitions, with the understanding and expectation that the person to whom they gave the forms would timely submit them to the appropriate clerk's office. Accordingly, they believed they were registered to vote and did not find out about the purported mix-up until the petition signatures were challenged.

30. On May 9, 2014, the Wayne County Clerk's Office issued a staff report recommending that, under state law, 644 signatures collected by petition circulators who were not registered to vote must be invalidated. After invalidating the 644 signatures, only 592 valid signatures remained and the staff recommended that Congressman Conyers not be placed on the ballot. (Exh. A.)

31. But for the state statute requiring that all petition gatherers be registered voters, M.C.L. §168.544c(3), Congressman Conyers would have had well more than 1000 valid signatures on the nominating petitions and would have qualified for the August primary ballot.

## APPLICATION OF THE VOTER-REGISTRATION REQUIREMENT TO PLAINTIFFS

### Ederl Edna Moore

32. Plaintiff Ederl Edna Moore is a 72-year-old registered voter and resident of the 13th Congressional District.

33. Ms. Moore has long recognized the critical importance of the right to vote. When she was a student at Central High School in Detroit, Judge Wade McCree, Jr., the first African American to be appointed to the Sixth Circuit Court of Appeals and the second African American Solicitor General, came to talk to the students about the importance of voting and she registered to vote as soon as she was old enough.

34. The right to vote was particularly important to Ms. Moore because her family moved to Detroit from the South where African Americans were prevented from voting by means of poll taxes, discriminatory tests, and threats and acts of violence.

35. Ms. Moore has voted in every primary and general election since she became eligible to vote. She has never missed an election because she knows the importance of every vote.

36. Ms. Moore has been a strong supporter of Congressman Conyers since the beginning of his career. In fact, she campaigned for him during the very

first time he ran for Congress, passed out literature for him outside of Federal's Department Store in Detroit, and put his cards on people's car windshields.

37. Ms. Moore believes that Congressman Conyers has been her representative since his first election to Congress and she has been proud to support him and vote for him as she recognizes him as a leader in the civil rights movement and a powerful African American voice in Congress.

38. Ms. Moore wants to vote for Congressman Conyers in the August primary, but is being deprived of the opportunity to do so because of the voter registration requirement of Section 544c(3).

39. The Wayne County Clerk has already determined that Congressman Conyers submitted a sufficient number of valid signatures to be placed on the primary ballot when the signatures disqualified on the basis of Section 544c(3) are counted. Therefore, if Section 544c(3) is struck down as unconstitutional and this Court orders Defendant Wayne County Clerk to count the signatures collected by petition circulators who were determined to be unregistered to vote, Congressman Conyers will be on the ballot and Ms. Moore will vote for him as an expression of her support for his policies, his accomplishments in Congress, and what she anticipates he will accomplish if he is returned to Washington.

**Plaintiff Tiara Willis-Pittman**

40.     Plaintiff Tiara Willis-Pittman is a 19-year-old resident of Detroit who lives in Michigan's 13th Congressional District, which is represented by Congressman John Conyers.

41.     Ms. Willis-Pittman is proud to have Congressman Conyers as her representative in the U.S. House of Representatives.

42.     Ms. Willis-Pittman strongly supports Congressman Conyers' policies, including his work for civil rights, and she wants to vote for him in the August primary and the November general election and send him back to Congress. If Congressman Conyers is on the ballot, she will vote for him in both the primary and the general election.

43.     In March, 2014, Plaintiff Willis-Pittman circulated nominating petitions to place Congressman Conyers on the August 5, 2014 ballot in the Democratic primary for Michigan's 13th Congressional District.

44.     Ms. Willis-Pittman gathered over 90 signatures of voters in the 13th Congressional District on Congressman Conyers' nominating petitions.

45.     When Willis-Pittman encouraged voters in the 13th Congressional District to sign the petition, she would often talk about Congressman Conyers' work for the district, the policies he supported and the importance of re-electing him.

46. Ms. Willis-Pittman believed that she was registered to vote when she circulated the petitions because she had filled out a voter registration application on December 13, 2013, and handed it to a woman doing voter registration for submission to the City of Detroit Clerk's Office. (See voter registration form, attached as Exh. D).

47. It was not until a challenge was filed to Congressman Conyers' nominating petitions that Ms. Willis-Pittman learned that the City of Detroit Clerk had not yet, in fact, processed the voter registration form that she had filled out. She has since taken action to ensure that she is registered to vote.

48. But for the voter registration requirement of Section 544c(3), the Wayne County Clerk's Office would not have invalidated all of the signatures that Ms. Willis-Pittman had gathered.

49. The Wayne County Clerk has already determined that Congressman Conyers submitted a sufficient number of valid signatures to be placed on the primary ballot when the signatures disqualified on the basis of Section 544c(3) are counted. Therefore, if Section 544c(3) is struck down as unconstitutional and this Court orders Defendant Wayne County Clerk to count the signatures collected by petition circulators who were determined to be not registered to vote at the time they circulated the petitions, the signatures that Ms. Willis-Pittman collected in

support of Congressman Conyers and the signatures collected by other unregistered petition circulators will count and he will be placed on the ballot.

## CAUSE OF ACTION

### VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

50. The First Amendment of the United States Constitution prohibits the abridgment of speech and political association.

51. The First Amendment applies to the states through the Fourteenth Amendment.

52. All persons violating the First Amendment under color of state law are liable in equity and at law under 42 U.S.C. § 1983.

53. Circulating and signing nominating petitions for candidates is core political speech where First Amendment protection is said to be "at its zenith."

54. M.C.L. § 168.544c(3) violates the First Amendment on its face.

55. M.C.L. § 168.544c(3) violates the First Amendment as applied to Plaintiffs.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Enter judgment in favor of Plaintiffs and against Defendants;

B. Declare that the voter registration requirement for petition circulators, codified at M.C.L. § 168.544c(3), is unconstitutional, and therefore unenforceable;

C. Temporarily, preliminarily, and permanently enjoin Defendants from enforcing the voter registration requirement for petition circulators, codified at M.C.L. § 168.544c(3), insofar as Defendants are relying or will rely on that unconstitutional requirement to invalidate signatures that are otherwise valid, or to deny ballot access to candidates who would otherwise qualify;

D. Order that Congressman Conyers be placed on the primary ballot based on the finding of the Wayne County Clerk that, but for the voter registration requirement of M.C.L. § 168.544c(3), he submitted sufficient otherwise valid signatures to qualify for the ballot; alternatively, order that Defendants recount the otherwise valid signatures of petition circulators who were not registered to vote;

E. Award Plaintiffs nominal and/or compensatory damages against Defendant Garrett;

F. Award Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

G. Grant or award such other relief as the Court may deem just, equitable or appropriate under the circumstances.

Respectfully submitted,

/s/ Michael J. Steinberg
Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
Brooke A. Tucker
Daniel S. Korobkin (P72842)
American Civil Liberties Union Fund
  of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6824
msteinberg@aclumich.org
kmoss@aclumich.org
btucker@aclumich.org

15

/s/ Mary Ellen Gurewitz
Mary Ellen Gurewitz (P25724)
Sachs Waldman, PC
Cooperating Attorney, ACLU
  Fund of Michigan
2211 East Jefferson Ave., Suite 200
Detroit, MI 48207
(313) 965-3464
megurewitz@sachswaldman.com

Attorneys for Plaintiffs

Dated: May 12, 2014