# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

EDERL EDNA MOORE, TIARA
WILLIS-PITTMAN, CHINITA TERRY,
AND JOHN CONYERS, Jr.,

   Plaintiffs,        Hon. Matthew F. Leitman

v.

               Case No. 14-cv-11903

RUTH JOHNSON, in her official capacity as
Secretary of State, and CATHY M. GARRETT,
in her individual capacity and in her official
capacity as Wayne County Clerk,

               CLAIM OF
   Defendants.       UNCONSTITUTIONALITY
_____/

Michael J. Steinberg (P43085)
Kary L. Moss (P48759)
Brooke A. Merriweather-Tucker
Daniel S. Korobkin (P72842)
American Civil Liberties Union
 Fund of Michigan
2966 Woodward Avenue
Detroit, Michigan 48201
(313) 578-6814

Mary Ellen Gurewitz (P25724)
Sachs Waldman, PC
Cooperating Attorney, ACLU
 Fund of Michigan
2211 East Jefferson Ave., Suite 200
Detroit, MI 48207
(313) 965-3464
megurewitz@sachswaldman.com

Attorneys for Plaintiffs Moore,
Willis-Pittman and Terry

John D. Pirich (P23204)
Andrea L. Hansen (P47358)
Honigman Miller Schwartz & Cohn LLP
222 North Washington Square, Suite 400
Lansing, MI 48933
(517) 377-0712
jpirich@honigman.com
ahansen@honigman.com

Attorneys for Plaintiff John Conyers, Jr.
_____/

## FIRST AMENDED COMPLAINT
### FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF

## INTRODUCTORY STATEMENT

1.      Plaintiffs file this civil rights action to challenge the constitutionality of the Michigan statute that requires individuals to be registered voters in order to circulate nominating petitions to place candidates for partisan office on the primary election ballot. M.C.L. § 168.544c(3).

2.      This statute is being relied upon by Defendant Wayne County Clerk Cathy Garrett to invalidate the signatures of hundreds of registered voters who were seeking to nominate Plaintiff Congressman John Conyers, Jr. as the Democratic candidate for United States Representative of Michigan's 13th Congressional District and to deny Congressman Conyers a place on the August primary ballot for that position.

3.      According to the "Final Determination" report of the Wayne County Clerk, released on May 13, 2014, Congressman Conyers' re-election campaign submitted 1,236 valid signatures of registered voters on nominating petitions for the August primary -- 236 more than the 1000 valid signatures needed.  However, after a challenge to the nominating petitions, the Clerk disqualified a total of more than 700 signatures under M.C.L. § 168.544c(3)'s voter registration requirements for petition circulators.

4.      Plaintiffs Ederl Edna Moore, Tiara Willis-Pittman and Chinita Terry are registered voters within the 13th Congressional District who are ardent

supporters of Congressman Conyers and will vote for Plaintiff Congressman Conyers in the August primary if he appears on the ballot.

5.     Ms. Moore, who is 72 years old, worked on Congressman Conyers' first campaign for the U.S. House of Representatives in 1964 and has supported him ever since.

6.     Plaintiffs Tiara Willis-Pittman and Chinita Terry circulated nominating petitions for Congressman Conyers. In March, 2014, Ms. Willis-Pittman submitted at least 65 valid signatures of registered voters and Ms. Terry submitted at least 350 valid signatures. However, the County Clerk ultimately determined that none of Ms. Willis-Pittman or Ms. Terry's signatures would be counted because they had not complied with M.C.L. § 168.544c(3)'s voter registration requirements for petition circulators.

7.     The United States Supreme Court, the United States Court of Appeals for the Sixth Circuit and courts across the country have struck down voter registration requirements for petition circulators because such requirements violate the First Amendment right to freedom of speech and freedom of political association.

8.     Plaintiffs seek a declaration that the voter registration requirements for petition circulators, set forth in M.C.L. § 168.544c(3), violate the First Amendment, both on their face and as applied in this instance, and they seek an

injunction against further enforcement of the provision.  They also seek an injunction ordering Defendants to refrain from invalidating signatures on Congressman Conyers' nominating petitions on the ground that some of the petition circulators did not comply with the unconstitutional voter registration requirements of M.C.L. § 168.544c(3).

## JURISDICTION AND VENUE

9.     Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because this is a civil action seeking relief for the deprivation of rights secured by the United States Constitution.

10.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b), because it is the judicial district where Plaintiffs and Defendants are located or reside, and where the majority of the events and omissions giving rise to this action occurred.

## PARTIES

11.     Plaintiff Ederl Edna Moore is a resident of the City of Detroit, which falls within the Eastern District of Michigan.

12.     Plaintiff Tiara Willis-Pittman is a resident of the City of Detroit, which falls within the Eastern District of Michigan.

13.     Plaintiff Chinita Terry is a resident of the City of Detroit, which falls within the Eastern District of Michigan.

14.     Plaintiff John Conyers, Jr. is a resident of the City of Detroit, which falls within the Eastern District of Michigan.

15.     Defendant Cathy M. Garrett is sued in her individual capacity and in her official capacity as Wayne County Clerk. Upon information and belief, she resides within the Eastern District of Michigan.

16.     Defendant Ruth Johnson is sued in her official capacity as the Michigan Secretary of State. As Secretary of State, she serves as Michigan's chief election officer. M.C.L. § 168.21.

17.     At all times relevant to this complaint, Defendants were acting under color of law.

## GENERAL FACTUAL ALLEGATIONS

### The Challenged Statute

18.     Under state law, circulators of nominating petition to place a candidate on the primary election ballot must be a registered voter – both at the time of circulating the petitions and at the time they sign the "certificate of circulator" at the bottom of the petition.  M.C.L. § 168.544c(3) provides, in part:

> At the time of circulation, the circulator of a petition shall be a registered elector of this state.  At the time of executing the certificate of circulator, the circulator shall be registered in the city or township indicated in the certificate of circulator on the petition.

5

19.     Until recently, M.C.L. § 168.544c(3) (hereafter, "Section 544c(3)")
also required petition circulators to be Michigan residents in order to circulate
referendum petitions, initiative petitions, and petitions to amend the Michigan
Constitution.  In February 2014, the Humane Society Legislative Fund and other
plaintiffs, represented by lawyers with the American Civil Liberties Union Fund of
Michigan, filed a lawsuit challenging the residency requirement for petition
circulators as a violation of the First Amendment. (E.D. Mich. No. 14-10601).

20.     On April 3, 2014, the Michigan legislature amended Section 544c(3)
to permit individuals who were not registered to vote and who were not residents
of Michigan to  circulate referendum petitions, initiative petitions, and petitions to
amend the Michigan Constitution – thereby rendering the Humane Society case
moot. The amendment to Section 544c(3), which was given immediate effect, also
eliminated the requirement that petition circulators be registered to vote in order to
circulate qualifying petitions on behalf of independent candidates wishing to run
for  the several statewide offices listed in M.C.L. § 168.590b(4), and to circulate
petitions to form a new political party as required by M.C.L. § 168.685.  See 2014
PA 94.

21.     Despite the amendment of Section 544c(3) to eliminate the voter
registration and/or residency requirement for petitioners circulating ballot initiative
and referendum petitions and qualifying petitions for several statewide offices, the

Michigan legislature inexplicably left in place the Section 544c(3) requirement that persons circulating nominating petitions for primary elections for other state offices be registered voters.

22.     The U.S. Supreme Court has already spoken clearly on this issue, striking down voter registration requirements for initiative petition circulators in *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999). Courts across the country, including the U.S. Court of Appeals for the Sixth Circuit, have held that the Court's reasoning in *Buckley* applies with full force to circulators of candidate nominating petitions. *See Nader v. Blackwell*, 545 F.3d 459, 475-76 (6th Cir. 2008); *Lerman v. Bd. of Elections*, 232 F.3d 135, 148 (2d Cir. 2000); *Krislov v. Rednour*, 226 F.3d 851, 861-62 (7th Cir. 2000); *see also Nader v. Brewer*, 531 F.3d 1028, 1035-36 (9th Cir. 2008); *Bogaert v. Land*, 675 F. Supp. 2d 742, 750-51 (W.D. Mich. 2009).

## Congressman Conyers' Nominating Petitions

23.     Congressman Conyers has represented parts of Detroit and the surrounding area since 1965, serving 24 two-year terms.

24.     Congressman Conyers currently represents Michigan's 13th Congressional District, which includes large parts of Detroit as well as several cities in western Wayne County, including Romulus, Inkster, Garden City, Dearborn Heights, Wayne, Redford, Melvindale, Ecorse and River Rouge.

25.     Congressman Conyers is currently the second-longest serving incumbent member of Congress and if he is re-elected in November, he will be the longest serving incumbent member of Congress. He has served as the Chairman of the House Judiciary Committee and is its ranking member.

26.     Under state law, Congressman Conyers was required to submit 1000 valid signatures of registered voters in the 13th Congressional District on the nominating petition to qualify for the August primary ballot. (See Exh. A, 5/13/14 "Final Determination" Report of the Wayne County Clerk.)

27.     The Conyers campaign submitted approximately 2000 signatures to the Wayne County Clerk, Defendant Cathy M. Garrett. (*Id.*)  Because all of the 13th Congressional District lies in Wayne County, the Wayne County Clerk is the official with whom the nominating petitions are filed, M.C.L. § 168.133, and who makes the determination as to the validity of the petition signatures and the sufficiency of the petition.  M.C.L. § 168.552.

28.     In the Wayne County Clerk's "Final Determination" report, issued on May 13, 2014, she indicated that prior to the challenge of the petition signatures submitted by Congressman Conyers, she had determined that his campaign had submitted 1,236 valid signatures, or 236 more signatures that were needed to qualify for the ballot. (See attachment to Exh. A; *also see* Exh. B, 4/30/14 letter

from the Office of the County Clerk to Congressman Conyers stating that he submitted a sufficient number of signatures to be placed on the primary ballot.)

29.    However, a challenge was filed to Congressman Conyers' nominating petitions on the ground that a large number of signatures should be invalidated because the petition circulators had not complied with the voter registration requirements of M.C.L. § 168.544c(3).

30.    After the challenge, the Wayne County Clerk determined that all the signatures gathered by five petition circulators were invalid because the petition circulators did not comply with the voter registration requirements of M.C.L. § 168.554c(3). (Exh. A.)

31.    Specifically, the Wayne County Clerk determined that Plaintiff Willis-Pittman and two other circulators, Daniel Pennington and Alex Canty, were not registered to vote when they circulated the petitions. The Wayne County Clerk further determined that Plaintiff Terry and another circulator, Davena Hogan, were not registered in the city or township they indicated on the "certificate of circulator" at the bottom of the petition.  (*Id.*)

32.    The Wayne County Clerk invalidated over 700 otherwise valid signatures based on M.C.L. § 168.544c(3) – 356 signatures collected by Plaintiff Terry, 64 signatures collected by Plaintiff Willis-Pittman, 189 signatures collected

by Daniel Pennington, 163 signatures collected by Alex Canty,[1] and 39 signatures collected by Davena Hogan.  After disqualifying another additional five signatures because the voter signed more than once, the Clerk determined that there were only 592 valid signatures remaining.  She concluded that under "the current laws and statutes of the State of Michigan, the nominating petitions filed by Congressman John Conyers, Jr. are insufficient to allow his name to appear on the August 5, 2014 Primary Ballot." (*Id.*; emphasis in original.)

33.     But for M.C.L. §168.544c(3)'s voter registration requirements for petition circulators, Congressman Conyers would have had well more than 1000 valid signatures on the nominating petitions and would have been certified for the August primary ballot.

## APPLICATION OF THE VOTER-REGISTRATION REQUIREMENT TO PLAINTIFFS

### Ederl Edna Moore

34.     Plaintiff Ederl Edna Moore is a 72-year-old registered voter and resident of the 13th Congressional District. (Exh. C, Moore Declaration.)

---

[1] It should be noted that the attachment to the Wayne County Clerk's "Final Determination" report (Exh. A) does not list the 163 invalidated signatures excluded within "Challenge #7" of the text of the document.  Also some of the numbers in the attachment do not match precisely with the numbers in the text of the document. Nonetheless, it is undisputed that absent Section 544c(3), there would be many more valid signatures than needed for Congressman Conyers to qualify for the ballot.

35.     Ms. Moore has long recognized the critical importance of the right to vote. When she was a student at Central High School in Detroit, Judge Wade McCree, Jr., the first African American to be appointed to the Sixth Circuit Court of Appeals and the second African American Solicitor General, came to talk to the students about the importance of voting and she registered to vote as soon as she was old enough. (*Id.*)

36.     The right to vote was particularly important to Ms. Moore because her family moved to Detroit from the South where African Americans were prevented from voting by means of poll taxes, discriminatory tests, and threats and acts of violence. (*Id.*)

37.     Ms. Moore has voted in every primary and general election since she became eligible to vote. She has never missed an election because she knows the importance of every vote. (*Id.*)

38.     Ms. Moore has been a strong supporter of Congressman Conyers since the beginning of his career. In fact, she campaigned for him during the very first time he ran for Congress, passed out literature for him outside of Federal's Department Store in Detroit, and put his cards on people's car windshields. (*Id.*)

39.     Ms. Moore believes that Congressman Conyers has been her representative since his first election to Congress and she has been proud to

support him and vote for him as she recognizes him as a leader in the civil rights movement and a powerful African American voice in Congress. (*Id.*)

40.     Ms. Moore wants to vote for Congressman Conyers in the August primary, but is being deprived of the opportunity to do so because of the voter registration requirements of Section 544c(3). (*Id.*)

41.     The Wayne County Clerk has already determined that Congressman Conyers submitted a sufficient number of valid signatures to be placed on the primary ballot when the signatures disqualified on the basis of Section 544c(3) are counted.  Therefore, if Section 544c(3) is struck down as unconstitutional and this Court orders Defendants to count the signatures collected by petition circulators without regard to whether they met the voter registration requirements of Section 544c(3), Congressman Conyers will be on the ballot and Ms. Moore will vote for him as an expression of her support for his policies, his accomplishments in Congress, and what she anticipates he will  accomplish if he is returned to Washington.

### Plaintiff Tiara Willis-Pittman

42.     Plaintiff Tiara Willis-Pittman is a 19-year-old resident of Detroit who lives in Michigan's 13th Congressional District, which is represented by Congressman Conyers. (Exh. D, Willis-Pittman Declaration.)

43.     Ms. Willis-Pittman is proud to have Congressman Conyers as her representative in the U.S. House of Representatives. (*Id.*)

44.     Ms. Willis-Pittman strongly supports Congressman Conyers' policies, including his work for civil rights, and she wants to vote for him in the August primary and the November general election and send him back to Congress. If Congressman Conyers is on the ballot, she will vote for him in both the primary and the general election. (*Id.*)

45.     In March, 2014, Plaintiff Willis-Pittman circulated nominating petitions to place Congressman Conyers on the August 5, 2014 ballot in the Democratic primary for Michigan's 13th Congressional District. (*Id.*)

46.     Ms. Willis-Pittman gathered over 90 signatures of voters in the 13th Congressional District on Congressman Conyers' nominating petitions. (*Id.*)

47.     When Willis-Pittman encouraged electors in the 13th Congressional District to sign the petition, she would often talk about Congressman Conyers' work for the district, the policies he supported and the importance of re-electing him. (*Id.*)

48.     Ms. Willis-Pittman believed that she was registered to vote when she circulated the petitions because she had filled out a voter registration application on December 13, 2013, and handed it to a woman doing voter registration for

submission to the City of Detroit Clerk's Office.  (*Id.*; *also see* voter registration form, attached as Exh. E).

49.    It was not until a challenge was filed to Congressman Conyers' nominating petitions that Ms. Willis-Pittman learned that the City of Detroit Clerk had not yet, in fact, processed the voter registration form that she had filled out. She has since taken action to ensure that she her application to vote was properly processed and she is now registered to vote. (Exh. D.)

50.    But for Section 544c(3)'s voter registration requirements for petition circulators, the Wayne County Clerk's Office would not have invalidated all of the signatures that Ms. Willis-Pittman had gathered.

51.    The Wayne County Clerk has already determined that Congressman Conyers submitted a sufficient number of valid signatures to be placed on the primary ballot when the signatures disqualified on the basis of Section 544c(3) are counted.  Therefore, if Section 544c(3) is struck down as unconstitutional and this Court orders Defendants to count the signatures collected by petition circulators without regard to whether they met the voter registration requirements of Section 544c(3), the signatures that Ms. Willis-Pittman collected in support of Congressman Conyers and the signatures collected by other unregistered petition circulators will count and he will be placed on the ballot.

**Plaintiff Chinita Terry**

52.     Plaintiff Chinita Terry lives at 15745 Whitcomb Street in Detroit, which falls within the 13th Congressional District. (Exh. F, Terry Declaration.)

53.     Ms. Terry, who is 61 years old, has been a strong supporter of Congressman Conyers for over 25 years since she first heard him speak in person. (*Id.*)

54.      She has circulated nominating petitions to put Congressman Conyers on the ballot for at least three elections, including the ballot for the August 5, 2014 primary election to determine the Democratic candidate for Michigan's 13th Congressional District. (*Id.*)

55.     In February, March and April of 2014, Ms. Terry circulated nominating petitions for Congressman Conyers to place him on the August ballot because she wanted to ensure that he would be sent back to Washington to represent the community's interests. (*Id.*)

56.     When she asked registered voters in the 13th Congressional District to sign her nominating petitions, she would extol Congressman Conyers' policies and virtues.  She told would-be signers how the community could depend on him to stand up for the interests and rights of the people and how he assisted members of the district when they needed help. (*Id.*)

57.     Ms. Terry resided at her home on Whitcomb Street in Detroit when she circulated the nominating petitions for Congressman Conyers and believed that she was registered to vote at that address at that time. (*Id.*)

58.     When she signed the "certificate of circulator" at the bottom of the petitions she circulated, she accurately listed her address as 15745 Whitcomb in Detroit. (*Id.*)

59.     In her May 13, 2014 "Final Determination" report, the Wayne County Clerk determined that Ms. Terry had changed her voter registration address from Detroit to Oak Park on February 25, 2014 and was therefore not registered to vote in the city indicated on her circulator certificate, in violation of the voter registration requirement of Section 544c(3).  Accordingly, the Wayne County Clerk ruled that all of the more than 350 otherwise valid signatures that Ms. Terry gathered on the nominating petitions would be invalidated.

60.     It was not until May 14, 2014, a day after the Wayne County Clerk invalidated the petition signatures she collected, that Ms. Terry learned that her voter registration address had been changed from Detroit to Oak Park. (*Id.*)

61.     Ms. Terry believes that a clerk in a Secretary of State office mistakenly changed her voter registration to Oak Park in February when Ms. Terry merely requested that the clerk change the address where she received her mail from the Secretary of State's Office. (*Id.*)

62.    This past winter, people were breaking into homes and stealing mail from mailboxes in Ms. Terry's neighborhood.  Ms. Terry believes that someone stole mail from her mailbox, including a debit card that someone tried to use to make a large, unauthorized purchase. (*Id.*)

63.    Ms. Terry asked a staff person in a local Secretary of State office if she could receive her mail at an alternative address to avoid the loss of more mail and the clerk said she could. (*Id.*)  In fact, there is a mechanism to receive one's mail from the Secretary of State at an alternative address without changing one's voter registration address.  (See point #5 to Secretary of State voter registration instructions at http://www.mi.gov/documents/MIVoterRegistration_97046_7.pdf.)

64.    Ms. Terry requested that her mail from the Secretary of State be sent to a home in Oak Park so her brother could bring her the mail when she saw him on Sundays in church. (*Id.*)

65.    When Ms. Terry asked the Secretary of State to change her mailing address to Oak Park, she never asked nor intended for her voter registration address to change. (*Id.*)

66.    On May 14, 2014, the same day Ms. Terry learned that the Secretary of State mistakenly changed her voter registration address to Oak Park, she went back to the Secretary of State office and had the staff fix their error and reinstate her voter registration back to 15745 Whitcomb in Detroit. (*Id.*)

17

67.    Ms. Terry feels strongly about wanting to vote for Congressman Conyers in the August primary and she will vote for him in August if he is on the ballot. (*Id.*)

68.    Ms. Terry will vote for Congressman Conyers again in November in the general election if he is on the ballot. (*Id.*)

69.    Ms. Terry is upset that her work to support Congressman Conyers has been hindered by the Wayne County Clerk's refusal to count the hundreds of nominating signatures she obtained.

70.    The Wayne County Clerk has already determined that Congressman Conyers submitted a sufficient number of valid signatures to be placed on the primary ballot when the signatures disqualified on the basis of Section 544c(3) are counted.  Therefore, if Section 544c(3) is struck down as unconstitutional and this Court orders Defendants to count the signatures collected by petition circulators without regard to whether they met the voter registration requirements of Section 544c(3), the signatures that Ms. Terry collected in support of Congressman Conyers and the signatures collected by the other circulators will count and he will be placed on the ballot.

**Plaintiff John Conyers, Jr.**

71.    Congressman Conyers seeks a 25th term in the United States House of Representatives.

72.     Prior to the challenge of the nominating petitions under Section 544c(3), the Wayne County Clerk determined that he had submitted 1,236 valid signatures on the nominating petitions, 236 signatures over the 1000 signatures needed to qualify for the primary ballot in August.

73.     After the challenge to the nominating petitions, the Wayne County Clerk invalidated a total of more than 700 signatures because five petition circulators did not comply with Section 544c(3).

74.     If this Court strikes down the voter registration requirements of Section 544c(3) as unconstitutional, the otherwise valid signatures gathered by the five petitioner circulators will count and Congressman Conyers will be placed on the ballot.

## CAUSE OF ACTION

## VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

75.     The First Amendment of the United States Constitution prohibits the abridgment of speech and political association.

76.     The First Amendment applies to the states through the Fourteenth Amendment.

77.     All persons violating the First Amendment under color of state law are liable in equity and at law under 42 U.S.C. § 1983.

78.     Circulating and signing nominating petitions for candidates is core political speech where First Amendment protection is said to be "at its zenith."

79.     M.C.L. § 168.544c(3) violates the First Amendment on its face.

80.     M.C.L. § 168.544c(3) violates the First Amendment as applied to Plaintiffs.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

A.     Enter judgment in favor of Plaintiffs and against Defendants;

B.     Declare that the voter registration requirements for petition circulators, codified at M.C.L. § 168.544c(3), are unconstitutional, and therefore unenforceable;

C.     Temporarily, preliminarily, and permanently enjoin Defendants from enforcing the voter registration requirements for petition circulators, codified at M.C.L. § 168.544c(3), insofar as Defendants are relying or will rely on such unconstitutional requirements to invalidate signatures that are otherwise valid, or to deny ballot access to candidates who would otherwise qualify;

D.     Order that Congressman Conyers be placed on the August 2014 primary ballot based on the finding of the Wayne County Clerk that, but for the voter registration requirement of M.C.L. § 168.544c(3), he submitted a sufficient number of otherwise valid signatures to qualify for the ballot; alternatively, order that Defendants recount the otherwise valid signatures collected by petition circulators who did not meet the voter registration requirements of M.C.L. § 168.544c(3);

E.     Award Plaintiffs nominal and/or compensatory damages against Defendant Garrett;

F.     Award Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

G.    Grant or award such other relief as the Court may deem just, equitable or appropriate under the circumstances.

Respectfully submitted,

/s/ Michael J. Steinberg
Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
Brooke A. Tucker-Merriweather
Daniel S. Korobkin (P72842)
American Civil Liberties Union Fund
   of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6824
msteinberg@aclumich.org
kmoss@aclumich.org
btucker@aclumich.org
dkorobkin@aclumich.org

/s/ Mary Ellen Gurewitz
Mary Ellen Gurewitz (P25724)
Sachs Waldman, PC
Cooperating Attorney, ACLU
Fund of Michigan
2211 East Jefferson Ave., Suite 200
Detroit, MI 48207
(313) 965-3464
megurewitz@sachswaldman.com

Attorneys for Plaintiffs Moore,
Willis-Pittman and Terry

Dated: May 15, 2014

/s/ Andrea L. Hansen
John D. Pirich (P23204)
Andrea L. Hansen (P47358)
Honigman Miller Schwartz
   & Cohn LLP
222 North Washington Square
Suite 400
Lansing, MI 48933
(517) 377-0712
jpirich@honigman.com
ahansen@honigman.com

Attorneys for Plaintiff
John Conyers, Jr.