## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EDERL EDNA MOORE, et al.,

      Plaintiffs,

                        Case No. 14-cv-11903

vs.

                        Hon. Matthew L. Leitman

RUTH JOHNSON, et al.,

      Defendants.

_____/

## PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

By this motion, Plaintiffs request that the Court enter a temporary restraining order and/or preliminary injunction consisting of the following immediate relief:

1. An order enjoining Defendants from enforcing the voter registration requirements for petition circulators, codified at M.C.L. § 168.544c(3), insofar as Defendants are relying or will rely on those requirements to invalidate signatures that are otherwise valid, or to deny ballot access to candidates who would otherwise qualify; and

2. An order requiring Defendants to declare Congressman John Conyers' nominating petitions sufficient, and/or to certify Congressman Conyers for ballot access, based on the fact that, but for the voter registration requirements of M.C.L. § 168.544c(3), he submitted a sufficient number of otherwise valid signatures to qualify for the ballot; or, alternatively, an order requiring Defendants to reexamine the petitions and not declare invalid any signatures based on a failure of a petition's circulator to meet the voter registration requirements of M.C.L. § 168.544c(3).

In compliance with Local Rule 7.1, counsel for Plaintiffs contacted counsel for Defendants to ascertain whether this motion will be opposed, explained the nature of this motion and its legal basis, and requested but did not obtain concurrence in the relief sought.

A supporting brief accompanies this motion.

Respectfully submitted,

/s/ Michael J. Steinberg
Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
Brooke A. Tucker-Merriweather
Daniel S. Korobkin (P72842)
American Civil Liberties Union Fund
  of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6824
msteinberg@aclumich.org
kmoss@aclumich.org
btucker@aclumich.org
dkorobkin@aclumich.org

/s/ Mary Ellen Gurewitz
Mary Ellen Gurewitz (P25724)
Sachs Waldman, PC
Cooperating Attorney, ACLU
Fund of Michigan
2211 East Jefferson Ave., Suite 200
Detroit, MI 48207
(313) 965-3464
megurewitz@sachswaldman.com

Attorneys for Plaintiffs Moore,
Willis-Pittman and Terry

/s/ Andrea L. Hansen
John D. Pirich (P23204)
Andrea L. Hansen (P47358)
Honigman Miller Schwartz
  & Cohn LLP
222 North Washington Square
Suite 400
Lansing, MI 48933
(517) 377-0712
jpirich@honigman.com
ahansen@honigman.com

Attorneys for Plaintiff
John Conyers, Jr.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

EDERL EDNA MOORE, et al.,

     Plaintiffs,

vs.

RUTH JOHNSON, et al.,

     Defendants.

_____/

Case No. 14-cv-11903

Hon. Matthew L. Leitman


## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Statement of Issues Presented ............................................................................ iv

Controlling or Most Appropriate Authority for the Relief Sought ...................... v

Introduction ........................................................................................................ 1

Background and Facts ........................................................................................ 2

Legal Standard for Preliminary Injunctive Relief ............................................. 6

Argument ........................................................................................................... 7

THIS COURT SHOULD GRANT IMMEDIATE INJUNCTIVE RELIEF
AGAINST DEFENDANTS' USE OF A FACIALLY UNCONSTITUTIONAL
STATUTE TO INVALIDATE OTHERWISE VALID PETITION SIGNATURES
AND DENY CONGRESSMAN CONYERS BALLOT ACCESS ....................... 7

    A.    Plaintiffs have a strong likelihood of success on the merits because M.C.L. §
168.544c(3) is unconstitutional on its face. ............................................... 8

        1.    The First Amendment is highly protective of collecting petition signatures for ballot
access, including candidate nominating petitions. ..................................... 9

        2.    M.C.L. § 168.544c(3)'s voter registration requirements for petition circulators are
subject to strict scrutiny because they severely burden First Amendment rights. ............... 11

        3.    M.C.L. § 168.544c(3) will not survive strict scrutiny because it is not narrowly
tailored to serve a compelling state interest. .......................................... 12

    B.    M.C.L. § 168.544c(3) cannot be used to invalidate the signatures collected by Plaintiffs
Willis-Pittman and Chinita Terry because the statute's voter registration requirements are
unconstitutional on their face. ................................................................. 14

    C.    Plaintiffs have standing to challenge Defendants' use of M.C.L. § 168.544c(3)'s voter
registration requirements to invalidate signatures collected by circulators who are not before
the court. ................................................................................................. 17

        1.    Registered voters have standing to challenge ballot access provisions that exclude
their chosen candidate from the ballot. .................................................... 13

        2.    Plaintiffs have standing to challenge Defendants' use of M.C.L. § 168.544c(3) to
invalidate signatures collected by petition circulators not before the court. ........................ 22

        3.    Congressman Conyers has standing to obtain the injunctive relief sought in this
motion. ..................................................................................................... 24

    D.    The remaining preliminary-injunction factors favor Plaintiffs. ...................... 26

Conclusion ........................................................................................................ 27

## STATEMENT OF ISSUES PRESENTED

I.    Whether the Court should enter an order temporarily restraining and/or preliminarily enjoining Defendants from enforcing the voter registration requirements for petitioner circulators, codified at M.C.L. § 168.544c(3), and either order that Congressman Conyers be placed on the ballot or that Defendants re-count the signatures without considering the voter registration requirement for circulators, where Plaintiffs are highly likely to prevail on their claim that the voter registration requirements violates the First Amendment.

    Plaintiffs say, "yes."

II.    Do the voters, petition circulators and/or candidates have standing to seek the relief requested in this case?

    Plaintiffs say, "yes."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY
## FOR THE RELIEF SOUGHT

**Cases standing for the proposition that Plaintiffs are entitled to a temporary restraining order and/or preliminary injunction because M.C.L. §168.544c(3) is unconstitutional:**

*Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008)

*Buckley v. Am. Constitutional Law Found., Inc.,* 525 U.S. 182 (1999)

*Meyer v. Grant*, 486 U.S. 414 (1988)

*Miller v. City of Cincinnati*, 622 F.3d 523 (6th Cir. 2010)

*Connection Distributing Co. v. Reno*, 154 F.3d 291 (6th Cir. 1998)

*Women's Med. Prof'l Corp. v. Voinovich*, 130 F. 3d 187 (6th Cir. 1997)

*Bogaert v. Land*, 675 F. Supp. 2d 742 (W.D. Mich. 2009)

**Cases standing for the proposition that Plaintiffs have standing to challenge Defendants' enforcement of M.C.L. § 168.544c(3) and obtain injunctive relief.**

*Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008)

*Sec'y of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947 (1984)

*Anderson v. Celebrezze*, 460 U.S. 780 (1983)

*Lerman v. Bd. of Elections*, 232 F.3d 135 (2d Cir. 2000)

*Mclain v. Meier*, 851 F.2d 1045 (8th Cir. 1988)

*Norfolk 302, LLC v. Vassar*, 524 F. Supp.2d 728 (E.D. Va. 2007)

*Young v. Illinois State Bd. of Elections*, 116 F. Supp.2d 977 (N.D. Ill. 2000)

## INTRODUCTION

Circulating petitions for ballot access is "core political speech" where First Amendment protection "is at its zenith." *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 186-87 (1999). Accordingly, the U.S. Supreme Court has held that it is unconstitutional to require petition circulators to be registered voters. *Id.* at 192-97. The Sixth Circuit has specifically confirmed that voter registration requirements for circulators of candidate nominating petitions are facially unconstitutional and cannot be enforced. *Nader v. Blackwell*, 545 F.3d 459, 475-76, 478-79 (6th Cir. 2008).

Despite these clear holdings, Michigan adheres to voter registration requirements for circulators of candidate nominating petitions. M.C.L. § 168.544c(3). As a result, Defendants have invalidated hundreds of otherwise valid signatures on the nominating petitions submitted by the reelection campaign of Congressman John Conyers, Jr. and have thereby denied Conyers ballot access for the upcoming August 2014 primary election. Because it is overwhelmingly likely that the voter registration requirements of M.C.L. § 168.544c(3) are unconstitutional on their face, Plaintiffs' motion for a temporary restraining order and/or preliminary injunction should be granted.

## BACKGROUND AND FACTS

Plaintiff Congressman John Conyers, Jr. has represented large parts of Detroit and other Southeastern Michigan cities since 1964 and he seeks to represent the residents of the 13th Congressional District for another term. If elected, he will become the longest-serving member of the next Congress.

Under state law, Congressman Conyers was required to submit 1000 valid signatures of registered voters in the 13th Congressional District on the nominating petition to qualify for the August primary ballot. (See Exh. A, 5/13/14 "Final Determination" Report of the Wayne County Clerk.) The Conyers campaign timely filed approximately 2000 signatures to the Wayne County Clerk, Defendant Cathy M. Garrett. (*Id.*)  Because all of the 13th Congressional District lies in Wayne County, the Wayne County Clerk is the official with whom the nominating petitions are filed, M.C.L. § 168.133, and who makes the determination as to the validity of the petition signatures and the sufficiency of the petition.  M.C.L. § 168.552.

After reviewing the petitions, the Wayne County Clerk determined that the Conyers Campaign had submitted 1,236 valid signatures, or 236 more signatures than were needed to qualify for the ballot. (See attachment to Exh. A.) However, a challenge to the petitions was brought by Conyers' opponent in the primary.  The opponent contended that a large number of signatures should be invalidated

because the petition circulators had not complied with the voter registration requirements of M.C.L. § 168.554c(3).

M.C.L. § 168.544c(3) [or "Section 544c(3)] provides, in relevant part:

> At the time of circulation, the circulator of a petition shall be a registered elector of this state. At the time of executing the certificate of circulator, the circulator shall be registered in the city or township indicated in the certificate of circulator on the petition.

After the challenge, the Wayne County Clerk determined that the signatures gathered by five petition circulators for the Conyers campaign were invalid because the petition circulators did not comply with the voter registration requirements of M.C.L. § 168.544c(3). (Exh. A.) Specifically, she determined that:

- The 351 otherwise valid signatures of registered voters gathered by Plaintiff Chinita Terry should be disqualified because Terry was not registered to vote in the city she listed on the certificate of circulator. (Exh. A, Challenge #5.)[1]

- The 64 otherwise valid signatures of registered voters collected by Plaintiff Tiara Willis-Pittman should be disqualified because Willis-Pittman was not registered to vote when she circulated the petitions. (Exh. A, Challenge #6.)[2]

---

[1] As set forth in detail in Ms. Terry's declaration, Ms. Terry believed that she was registered at the address that she listed on the circulator certificate, but a clerk at a Secretary of State mistakenly changed her voter address from Detroit to Oak Park when she asked the clerk to just send all Secretary of State mail to an address in Oak Park. She made this request because important mail was being stolen out of her mailbox in Detroit. (Exh. B, ¶¶ 8-18.)

[2] As set forth in detail in Ms. Willis-Pittman's declaration, she believed that she was registered to vote when she circulated the petitions because she had filled out a voter registration application on December 13, 2013 and handed it to a woman doing voter registration with the expectation that it would be submitted to the

- The 163 otherwise valid signatures of registered voters collected by Alex Canty should be disqualified because Canty was not a registered voter. (Exh. A, Challenge #7.)[3]

- The 188 otherwise valid signatures of registered voters collected by circulator Daniel Pennington should be disqualified because he was not a registered voter when he collected the signatures. (Exh. A, Challenge # 8.)

- The 16 otherwise valid signatures of registered voters gathered by circulator Davena Hogan should be disqualified because Hogan was not registered to vote in the city she listed on the certificate of circulator. (Exh. A, Challenge #5.)

Plaintiffs filed an amended complaint on May 15, 2014, asserting that the voter registration requirements of Section 544c(3) violate the First Amendment protections of freedom of association and freedom of speech. Plaintiff Ederl Edna Moore is a 72-year-old ardent supporter of Congressman Conyers who worked on his very first campaign in 1964 and has voted for him ever since. (Exh. D, Moore

---

Detroit Clerks'Office.  It was not until this controversy arose that she learned that the Clerk had not yet processed her voter registration application.  She has since taken action to ensure that her application was properly processed and she is now registered to vote in the 13th Congressional District. (Exh. C, ¶¶ 8-11).

[3] It should be noted that the attachment to the Wayne County Clerk's Final Determination document (Exh. A) does not list the 163 invalidated signatures excluded within "Challenge #7" of the text of the document.  Also some of the numbers in the attachment do not match precisely with the numbers in the text of the document. Plaintiff will reference the numbers the Wayne County Clerk used in the text of the report. No matter which numbers one uses, however, it is undisputed that absent Section 544c(3)'s voter registration requirements for petition circulators, there would be many more valid signatures than needed for Congressman Conyers to qualify for the ballot.

4

Declaration, ¶¶ 1, 5-7.)  Plaintiffs Chinita Terry and Tiara Willis-Pittman circulated nominating petitions for Congressman Conyers to put him on the ballot as an expression of support for him and his work for civil rights. (Exh. B, Terry Declaration, ¶¶ 4-6; Exh. C, Willis-Pittman Declaration, ¶¶ 3-8.) When they asked voters to sign the nominating petitions, they extoled Congressman Conyers' virtues and talked with would-be signers about his policies, his work for the district, and how he stands up for the rights and interests of the community. (Exh. B, ¶¶ 5-6; Exh. C, ¶ 8.)

Moore, Willis-Pittman and Terry are all currently registered voters within the 13th Congressional District.  They strongly want to vote for Congressman Conyers in the August primary and will vote for him then and in the November general election if he is on the ballot.  (Exh. D, ¶¶ 8-9; Exh. C, ¶ 5; Exh. B, ¶¶ 18-20.)  As established below, they must be able to do so because the voter registration requirements of Section 544c(3) that are preventing Congressman Conyers from being placed on the ballot are facially unconstitutional and unenforceable.

## LEGAL STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

In ruling on a motion for preliminary injunctive relief, a district court must consider the following factors:

1. the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim;

2. whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief;

3. the probability that granting the injunction will cause substantial harm to others; and

4. whether the public interest is advanced by the issuance of the injunction.

*Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994).  The same factors are considered on a motion for a temporary restraining order.  *See Coleman v. Ann Arbor Transp. Auth.*, 904 F. Supp. 2d 670, 680 (E.D. Mich. 2012).  Where, as here, "a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor."  *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

6

## ARGUMENT

**THIS COURT SHOULD GRANT IMMEDIATE INJUNCTIVE RELIEF AGAINST DEFENDANTS' USE OF A FACIALLY UNCONSTITUTIONAL STATUTE TO INVALIDATE OTHERWISE VALID PETITION SIGNATURES AND DENY CONGRESSMAN CONYERS BALLOT ACCESS.**

Because of the clarity with which the U.S. Supreme Court and the Sixth Circuit have spoken on this issue, it is overwhelmingly likely that Plaintiffs will succeed on the merits of their First Amendment facial challenge to M.C.L. § 168.544c(3)'s voter registration requirements for the circulators of candidate nominating petitions. And because voter registration requirements for petition circulators are unconstitutional on their face, such requirements are void *in toto* and cannot be used as a basis for invalidating *any* signatures that would otherwise be valid. Additionally, because this is an overbreadth challenge to a statute that burdens the political speech and association rights of voters, petition circulators and candidates, Plaintiffs have standing to challenge M.C.L. § 168.544c(3)'s voter registration requirements and to seek relief prohibiting Defendants from using these unconstitutional requirements to invalidate any otherwise valid signature. Furthermore, the remaining preliminary injunction factors strongly favor Plaintiffs and the immediate relief they seek by this motion.

### A.    Plaintiffs have a strong likelihood of success on the merits because M.C.L. § 168.544c(3) is unconstitutional on its face.

The U.S. Supreme Court and the U.S. Court of Appeals for the Sixth Circuit have already spoken clearly on the principal question before this Court.  In *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 186-87 (1999), the Supreme Court held that it was unconstitutional to require that circulators of petitions for ballot initiatives be registered to vote.  And in *Nader v. Blackwell*, 545 F.3d 459, 475-76 (6th Cir. 2008), the Sixth Circuit held that the Court's reasoning in *Buckley* applies with full force to circulators of candidate nominating petitions. *Buckley* and *Nader* leave no room for doubt: voter registration requirements for petition circulators are unconstitutional.

"Election regulations that impose a severe burden on associational rights are subject to strict scrutiny," meaning they will be upheld "only if they are narrowly tailored to serve a compelling state interest."  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008).  Applying that standard along with *Buckley* and *Nader*, Michigan's voter registration requirements for circulators of candidate nominating petition are unconstitutional because: (1) circulating petitions for ballot access is core political speech entitled to maximum protection under the First Amendment; (2) the Michigan law requiring that circulators of candidate nominating petitions be registered to vote is subject to strict scrutiny, as

it severely burdens First Amendment rights; and (3) the law will not survive strict scrutiny, as it is not narrowly tailored to serve a compelling state interest.

### 1.  The First Amendment is highly protective of collecting petition signatures for ballot access, including candidate nominating petitions.

The first inquiry is to identify whether, and to what extent, Plaintiffs' activity is protected by the First Amendment.  The Supreme Court has already clearly answered this question: the circulation of ballot petitions is an area in which First Amendment protection is "at its zenith."  *Buckley*, 525 U.S. at 187.  As the Court more fully explained in *Meyer v. Grant*, 486 U.S. 414, 421-22 (1988):

> The circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change.  Although a petition circulator may not have to persuade potential signatories that a particular proposal should prevail to capture their signatures, he or she will at least have to persuade them that the matter is one deserving of the public scrutiny and debate that would attend its consideration by the whole electorate.  This will in almost every case involve an explanation of the nature of the proposal and why its advocates support it.  Thus, the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as "core political speech."

(Footnotes omitted.)

Although *Buckley* and *Meyer* should leave no doubt that M.C.L. § 168.544c(3)'s voter registration requirements affect activity that is entitled to maximum First Amendment protection, Defendants might try to distinguish *Buckley* and *Meyer* on the grounds that they involved the circulation of petitions

9

for ballot initiatives whereas this case involves the circulation of petitions for the

nomination of a political candidate.  However, the Sixth Circuit flatly rejected that

attempted distinction in *Nader v. Blackwell*, 545 F.3d at 475-76:

> We must decide the extent to which the principles that *Buckley*
> established regarding initiative-petition circulators and registration
> requirements may be extended.  There appears to be little reason to
> limit *Buckley*'s holding to initiative-petition circulators.  As the
> Supreme Court noted: "Initiative-petition circulators also resemble
> candidate-petition signature gatherers . . . for both seek ballot access."
> *Buckley*, 525 U.S. at 191.  Indeed, common sense suggests that, in the
> course of convincing voters to sign their petitions, candidate-petition
> circulators engage in at least as much "interactive political speech"—
> if not more such speech—than initiative-petition circulators.  Some of
> our sister circuits have concluded the same and have applied *Buckley*
> to invalidate state laws requiring that candidate-petition circulators be
> registered voters.  *See Lerman v. Bd. of Elections*, 232 F.3d 135, 148
> (2d Cir.2000) (stating that there was "no basis to conclude" that the
> level of interactive political speech of candidate- and initiative-
> petition circulators differed); *Krislov v. Renour*, 226 F.3d 851, 861-62
> (7th Cir. 2000) (noting that the burden on candidates is even greater
> than the burden on initiative proponents because a candidate's
> circulators must "speak to a broader range of political topics"); *see
> also Nader v. Brewer*, 531 F.3d 1028, 1035-36 (9th Cir. 2008)
> (applying *Buckley* to case involving candidate-petition circulators).
> We agree with these courts that we should not categorically exclude
> candidate-petition circulators from *Buckley*'s analysis of registration
> requirements.

(Citation formats modified.)  Accordingly, the circulation of petitions for

candidates under M.C.L. § 168.544c(3) is entitled to just as much First

Amendment protection as the circulation of petitions for ballot initiatives.[4]

---

[4] *See also Bogaert v. Land*, 675 F. Supp. 2d 742, 750-51 (W.D. Mich. 2009) (Bell,
J.) (relying on *Nader v. Blackwell* to conclude that recall petition circulators are

**2.    M.C.L. § 168.544c(3)'s voter registration requirements for petition circulators are subject to strict scrutiny because they severely burden First Amendment rights.**

The Sixth Circuit has held that voter registration requirements for circulators of candidate nominating petitions are subject to strict scrutiny because they "severely limit[] political speech." *Nader v. Blackwell*, 545 F.3d at 478 (Moore, J., concurring, joined by Clay, J.).[5]  The conclusion that Michigan's law, too, severely burdens First Amendment rights, and is therefore subject to strict scrutiny, flows directly from the Supreme Court's analysis in *Meyer* and *Buckley*.  In *Meyer*, the Supreme Court held that that a law against using paid circulators

> restricts political expression in two ways:  First, it limits the number of voices who will convey appellees' message and the hours they can speak and, therefore, limits the size of the audience they can reach. Second, it makes it less likely that appellees will garner the number of signatures necessary to place the matter on the ballot, thus limiting their ability to make the matter the focus of statewide discussion. . . . [T]he prohibition against the use of paid circulators has the inevitable effect of reducing the total quantum of speech on a public issue.

*Id.*, 486 U.S. at 422-23.  Then, in *Buckley*, the Court found that a law requiring circulators to be registered to vote severely burdened political speech for essentially the same reasons:  "Beyond question, Colorado's registration

---

entitled to just as much First Amendment protection as initiative and candidate petition circulators).

[5] Because Judge Moore's opinion was joined by Judge Clay, it constitutes the opinion of the court and is thus binding precedent.  *See Nader v. Blackwell*, 545 F.3d at 461, 478.

requirement drastically reduces the number of persons, both volunteer and paid, available to circulate petitions." *Id.*, 525 U.S. at 193.  The Court found that the registration requirement "produces a speech diminution of the very kind produced by the ban on paid circulators at issue in *Meyer*," *id.* at 194, because both restrictions "decrease[] the pool of potential circulators," *id.*, and "limit the number of voices who will convey the initiative proponents' message and, consequently, cut down the size of the audience proponents can reach[.]" *Id.* at 194-95.

With respect to Michigan's law, the same conclusion follows.  Prohibiting individuals who are not registered to vote from circulating petitions significantly decreases the pool of potential circulators, thereby "limit[ing] the number of voices who will convey the initiative proponents' message and, consequently, cut[ting] down the size of the audience proponents can reach." *Id.*  The requirement thus "produces a speech diminution of the very kind produced by" the restriction struck down in *Meyer* and *Buckley*. *Id.* at 194.

> **3.   M.C.L. § 168.544c(3) will not survive strict scrutiny because it is not narrowly tailored to serve a compelling state interest.**

In *Nader v. Blackwell*, the Sixth Circuit held that Ohio's requirement that circulators of candidate nominating petitions be registered voters "cannot survive strict scrutiny." *Nader v. Blackwell*, 545 F.3d at 478 (Moore, J., concurring, joined

by Clay, J.). There is no reason to believe that Michigan's identical requirement will survive strict scrutiny here.

"Under strict scrutiny review, the government bears the burden of showing that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.,* 172 F.3d 397, 409 (6th Cir. 1999) (internal quotation marks omitted). Although Defendants in this case have not yet articulated any interests in support of M.C.L. § 168.544c(3)'s voter registration requirements for petition circulators, it is important to note that M.C.L. § 168.544c(3) already provides that the circulators of a petition for constitutional amendments, initiated laws, referenda, new political parties, and even certain candidates seeking statewide offices need not be registered voters or even Michigan residents. It is difficult to imagine why the state has a need for circulators of certain *candidate* petitions to be registered voters while the circulators of other types of petitions need not be. Therefore, it is exceedingly unlikely that M.C.L. § 168.544c(3)'s voter registration requirements for circulators of candidate nominating petitions are both necessary to serve a compelling state interest and narrowly drawn to achieve that end.

**B.**   **M.C.L. § 168.544c(3) cannot be used to invalidate the signatures collected by Plaintiffs Willis-Pittman and Chinita Terry because the statute's voter registration requirements are unconstitutional on their face.**

The case law set forth above establishes that M.C.L. § 168.544c(3)'s voter registration requirements for petition circulators are very likely unconstitutional. Meanwhile, the facts set forth above establish that M.C.L. § 168.544c(3) voter registration requirements for petition circulators are being used to invalidate otherwise valid petition signatures and thereby deny Congressman Conyers ballot access for the August 2014 primary election.  Defendants must be enjoined from invalidating petition signatures where the basis for the invalidation is an unconstitutional voter registration requirement for the circulator who collected the signature.

Under the overbreadth doctrine of the First Amendment, voter registration requirements for petition circulators are unconstitutional on their face. *Nader v. Blackwell*, 545 F.3d at 478-79 (Clay, J., concurring, joined by Moore, J.).[6]  "[I]f a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances." *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997); *see also Speet v. Schuette*, 726 F.3d 867, 871-72 (6th Cir. 2013).

---

[6] Because Judge Clay's opinion was joined by Judge Moore, it constitutes the opinion of the court and is thus binding precedent.  *See Nader v. Blackwell*, 545 F.3d at 461, 478.

Such a law is "invalid *in toto*—and therefore incapable of any valid application."
*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.5
(1982). "If a facial challenge is upheld, then the state cannot enforce the statute
against anyone." *Amelkin v. McClure*, 205 F.3d 293, 296 (6th Cir. 2000).

With respect to the signatures collected by Plaintiff Tiara Willis-Pittman,
Defendant Garrett determined that 64 otherwise valid petition signatures are
invalid because Ms. Willis-Pittman was allegedly not a registered voter at the time
she circulated the petitions. Because the voter registration requirement for petition
circulators is unconstitutional on its face, M.C.L. § 168.544c(3) cannot be applied
to Ms. Willis-Pittman or used to invalidate the otherwise valid signatures that she
collected. Clearly, then, Plaintiffs are entitled to injunctive relief with respect to
these signatures.

As for the signatures collected by Plaintiff Chinita Terry, Plaintiffs
anticipate that Defendants will try to argue that these signatures were invalidated
for a reason other than Terry not being a registered voter. The record reflects that
Ms. Terry was a registered voter in Michigan, but she was allegedly registered at
an address in a city other than the city that she listed as her residence on her
certificate of circulator.[7] Because M.C.L. § 168.544c(3) requires that "the

---

[7] As explained in her declaration, Ms. Terry intended to have some of her mail
forwarded to her brother's address in Oak Park but continued to reside in Detroit
and intended to remain a registered voter of Detroit.

circulator shall be registered in the city or township indicated in the certificate of circulator on the petition," Defendant Garrett determined that 351 otherwise valid petition signatures are invalid because Ms. Terry was not registered in Detroit.

Although Ms. Terry's situation is slightly different from that of Ms. Willis-Pittman, Defendants must be enjoined from invalidating the Terry signatures for substantially the same reason they must be enjoined from invalidating the Willis-Pittman signatures.  The requirement that a petition circulator be registered to vote at an address in the city indicated on the certificate of circulator is merely a subset of the requirement that a petition circulator be registered to vote.  Because it is unconstitutional to require petition circulators to be registered to vote, a requirement that petition circulators be registered to vote in a particular jurisdiction is also unenforceable.

To be clear, the constitutionality of the statute might be a closer question had it stated: "*If* a circulator is registered to vote, the circulator must be registered in the city or township indicated in the certificate of circulator on the petition." [8] However, that is not what M.C.L. § 168.544c(3) says.  Rather, M.C.L. § 168.544c(3) says that the circulator *must* be registered in the city or township

---

[8] Even that statute would be suspect, however, as there is no rational purpose for requiring the circulator of a petition to indicate her city or township of registration given that her registration status can be easily verified by the Qualified Voter File and there is no independent requirement that the circulator be registered in the city or township identified in the heading of the nominating petition.

indicated in the certificate of circulator on the petition.  Because a voter

registration requirement is unconstitutional on its face, and therefore incapable of

*any* valid application, this provision of M.C.L. § 168.544c(3) cannot be enforced.

Accordingly, Plaintiffs are also entitled to injunctive relief with respect to the

Terry signatures.

According to Defendant Garrett's final determination, M.C.L.

§ 168.544c(3)'s voter registration requirements led to the invalidation of 64

signatures collected by Ms. Willis-Pittman and 351[9] signatures collected by Ms.

Terry.  If Defendants are ordered to count these 415 signatures, there are more than

1000 valid signatures and Congressman Conyers will be certified for the primary

ballot.

**C.**     **Plaintiffs have standing to challenge Defendants' use of M.C.L.**
         **§ 168.544c(3)'s voter registration requirements to invalidate**
         **signatures collected by circulators who are not before the court.**

At a telephonic status conference on May 13, the Court asked Plaintiffs to

address whether Plaintiff Moore has standing to challenge M.C.L. § 168.544c(3)

and whether Plaintiff Willis-Pittman has standing to seek injunctive relief

regarding the signatures that she did not collect.  Since that time, the addition of

two new plaintiffs have been added to the lawsuit: Congressman Conyers himself,

---

[9] Again, there is a discrepancy between the text of this report and the attachment at
the end. Plaintiffs are using the numbers in the text of the report. The attachment
suggests that the Wayne County Clerk was invalidating 65 (not 64) Willis-Pittman
signatures and 421 (not 415) Terry signatures based on Section 544c(3).

and Chinita Terry, whose 351 signatures, when added to Ms. Willis-Pittman's, would cross the 1000-signature threshold to qualify Conyers for the ballot. However, to the extent there remain questions as to standing, Plaintiffs will address those questions here.

     1.     **Registered voters have standing to challenge ballot access provisions that exclude their chosen candidate from the ballot.**

As an initial matter, Plaintiff Moore has standing to challenge M.C.L. § 168.544c(3) because she is a registered voter and wishes to vote for the candidate who is being kept off the ballot as a result of its allegedly unconstitutional restrictions. Plaintiffs Willis-Pittman and Terry also have standing as registered voters because they live in Conyers' district and wish to vote for him.

The Supreme Court has explained that "the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." *Bullock v. Carter*, 405 U.S. 134, 143 (1972). This stems from the foundational democratic principle that voters have the freedom to associate with the candidate of their choice. Consequently, courts have consistently recognized that voters have standing to challenge unconstitutional statutory provisions that prevent candidates from appearing on a ballot. *See, e.g., Belitskus v. Pizzingrilli,* 343 F.3d 632, 641 (3d Cir. 2003); *Burdick v. Takushi*, 937 F.2d 415, 417 -18 (9th Cir. 1991); *Mclain*

18

*v. Meier*, 851 F.2d 1045, 1048 (8th Cir. 1988); *Young v. Illinois State Bd. of Elections*, 116 F. Supp. 2d 977, 980 (N.D. Ill. 2000); *see also Miyazawa v. City of Cincinnati*, 45 F.3d 126, 128 (6th Cir. 1995) (recognizing the principle that a voter "unable to vote for his specific candidate of choice due to the subject law" has standing to challenge that law).

In a case very similar to the one at bar, a federal court in Illinois determined that a registered voter had standing to challenge a statutory provision that prevented individuals from circulating petitions for more than one candidate. *Young*, 116 F. Supp. 2d at 980. Like Congressman Conyers, the candidate in *Young* had obtained enough signatures to satisfy the state-law requirement for appearance on the ballot; however, because of the statutory circulator restriction, the defendant State Board of Elections invalidated many of those signatures, which disqualified the candidate from being on the ballot. *Id.* at 979-80. In that case, the court determined, over defendants' objection, that a registered voter in the candidate's district who filed an affidavit expressing his desire to vote for the candidate had standing to challenge the constitutionality of the circulator restriction because if the candidate "is stricken from the ballot, [the voter's] right to support the candidate of his choice is hindered." *Id.* at 981.

To satisfy Article III's standing requirements, a plaintiff must have an injury that is concrete, particularized, fairly traceable to the challenged action of the

19

defendant, and likely to be redressed by a favorable decision. *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 573 (6th Cir. 2004). Here, there is no question that Plaintiffs will be concretely injured by Defendants' continued enforcement of Section 544c(3) because such enforcement will keep Congressman Conyers from appearing on the primary ballot in August 2014. Ms. Moore, Ms. Willis-Pittman and Ms. Terry are all registered voters in Conyers' district and have attested that they wish to vote for him. *See* Ex. _ Defendants' actions will therefore injure Plaintiffs by preventing them from exercising their First Amendment right to vote for their chosen candidate.[10] *See McLain,*, 851 F.2d at 1048 (finding registered voter had standing to challenge ballot access provision because that provision "would restrict [voter's] ability to vote for the candidate of his choice"); *see also Anderson v. Celebrezze*, 460 U.S. 780, 787-88 (1983) ("The exclusion of candidates . . . burdens voters' freedom of association . . . ."); *Young*, 116 F. Supp. 2d at 980 (registered voter has standing to challenge ballot access provision because if candidate's name is stricken from ballot, voter's "right to support the candidate of his choice is hindered.").[11]

_____

[10] Although voters do not have a fundamental right to vote for "any particular candidate," voters do "have a right to choose among candidates placed on the ballot without unconstitutional exclusions or restrictions." *Thorsted v. Gregoire*, 841 F. Supp. 1068, 1073 (W.D. Wash. 1994).

[11] Even the possibility that a voter could write-in the candidate of their choice notwithstanding the unconstitutional ballot restriction does not negate the

With respect to the type of ballot regulation at issue here, courts have pointed out that the "primary concern is not the interest of [the] candidate . . . but rather, the interests of the voters who chose to associate together to express their support for [that] candidacy and the views . . . espoused." *Miller*, 169 F.3d at 1123 (quoting *Anderson*, 460 U.S. at 806). Therefore, when an unconstitutional provision such as Section 544c(3) impedes a voter's ability to use the franchise to express support for her chosen candidate, that harm is a "sufficiently concrete and particularized injury" to satisfy the standing requirement. *Id.*

Next, Plaintiffs' injuries are directly traceable to Defendants' conduct because it is solely Defendants' enforcement of Section544c(3) that is currently preventing Congressman Conyers' name from appearing on the August 2014 ballot. *See McLain*, 851 F.2d at 1048.

Finally, Plaintiffs' injuries can be redressed by this Court because an injunction against Defendants' use of Section 544c(3) to invalidate signatures will bring Conyers over the 1000-signature threshold and result in his obtaining ballot access for the August 2014 primary election. In other words, a favorable ruling by this Court will result in Conyers appearing on the primary ballot, which in turn will

---

"threatened injury" of that unconstitutional restriction because a write-in is not an "adequate substitute" for a candidate's appearance on the printed ballot. *Thorsted*, 841 F. Supp. at 1073 - 74 (citing *Anderson*, 460 U.S. at 799 n.26).

allow Plaintiffs to exercise their First Amendment right to vote for their chosen candidate.

> **2.      Plaintiffs have standing to challenge Defendants' use of M.C.L. § 168.544c(3) to invalidate signatures collected by petition circulators not before the court.**

In addition to having standing as registered voters, Ms. Willis-Pittman and Ms. Terry also have standing to challenge Section 544c(3) in their capacities as petition circulators who gathered signatures to place Congressman Conyers on the ballot.  As previously discussed, the circulation of a petition "involves both the expression of a desire for political change and a discussion of the merits of the proposed change" and thus constitutes "core political speech." *Meyer*, 486 U.S. at 421-22.  As a result, courts have consistently held that individuals who desire to circulate petitions and individuals who have already circulated petitions have standing to raise First Amendment challenges to petition restrictions.  *See, e.g., Libertarian Party of Virginia v. Judd*, 881 F. Supp. 2d 719, 723-24 (E.D. Va. 2012), *aff'd*, 718 F.3d 308 (4th Cir. 2013); *Daien v. Ysursa*, 711 F. Supp. 2d 1215, 1223-24 (D. Idaho 2010); *Young*, 116 F. Supp. 2d at 980-81; *see also Lerman v. Bd. of Elections*, 232 F.3d 135, 142-43 (2d Cir. 2000) (finding non-resident who witnessed petition signatures had standing to challenge law establishing residency requirements for signature witnesses).

Furthermore, Plaintiffs have standing to vindicate not only their rights, but also those of others who are being adversely impacted by the statute—including other petition circulators who are not before this Court as plaintiffs.  Because Section 544c(3) "regulat[es] the ability to engage in interactive political speech and associational activity, [Ms. Willis-Pittman and Ms. Terry's] standing to challenge the statute on its face is governed by the overbreadth doctrine." *Lerman*, 232 F.3d at 144; *see also Nader v. Blackwell*, 545 F.3d 459, 478-79 (6th Cir. 2008) (Clay, J., concurring, joined by Moore, J.) (finding plaintiff's First Amendment challenge to statutory petition circulator residency requirement "governed by the overbreadth doctrine").   In the unique context of overbreadth claims, the Supreme Court has held that a party has standing to "assert the rights of another without regard to the ability of the other to assert his own claims and with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Sec'y of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984) (internal citations omitted).  This standing also applies to actions for injunctive relief, such as the case here.  *See Norfolk 302, LLC v. Vassar*, 524 F. Supp. 2d 728, 735 (E.D. Va. 2007).

As discussed above, Section 544c(3)'s voter registration requirement is facially unconstitutional, *see Blackwell*, 545 F.3d at 478-79, meaning that it is "invalid *in toto*—and therefore incapable of any valid application." *Vill. of*

23

*Hoffman Estates*, 455 U.S. at 495, n.5. Under the third-party doctrine for First Amendment overbreadth claims, Plaintiffs may obtain injunctive relief striking down the law "in its entirety," and leaving "nothing standing." *Connection Distributing Co. v. Holder*, 557 F.3d 321, 335-36 (6th Cir. 2009) (en banc) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612-13 (1973)). Therefore, Plaintiffs have standing to seek an injunction against the enforcement of Section 544c(3)'s voter registration requirements against any petition circulator or candidate.

Applying the overbreadth standard here, the record reflects that in addition to the 415 signatures collected by Ms. Willis-Pittman and Ms. Terry, 367 signatures collected by petition circulators Alex Canty, Daniel Pennington, and Davena Hogan were invalidated by Defendant Garrett pursuant to Section §168.544c(3)'s unconstitutional voter registration requirements. These 782 signatures, when added to 592 signatures already deemed valid under Garrett's final determination, clearly entitle Congressman Conyers to ballot access.

### 3. Congressman Conyers has standing to obtain the injunctive relief sought in this motion.

In *Nader v Blackwell*, 545 F.3d at 471, the Sixth Circuit concluded that that "there is little argument that Nader's removal from the ballot constitutes an injury-in-fact and that [defendant's] conduct caused the alleged injury." The Court explained further that to "allege a sufficient injury under the First Amendment, a plaintiff must establish that he or she is subject to a government power that is

regulatory, proscriptive or compulsory in nature." *Id.* (citations omitted). "Here, [defendant] regulated and proscribed Nader when he applied [the statutory provision] to Nader's petitions, invalidated 1701 signatures because circulators failed to comply [with the registration requirement] and removed Nader from the ballot. *Removal from the ballot surely constitutes a cognizable injury in fact." Id.* at 472 (citations omitted, emphasis added). In addition, Nader was harmed by being denied the ability to use the circulators of his choice. *Id.* Likewise, Nader's harm was easily traceable to the defendant's conduct, which prevented him from being on the ballot. *Id.; see also Krislov v. Rednour,* 226 F.3d 851 (7th Cir. 2000) (candidates held to have standing to challenge Illinois's circulator registration and residency requirements).

Here, as in *Nader v. Blackwell,* "there is little argument" that Defendants have or will cause Congressman Conyers injury by denying him ballot access. As a result of Defendants' enforcement of M.C.L. §168.544c(3)'s unconstitutional voter registration requirements, Conyers' First Amendment right to use circulators of his choice has been denied which has resulted in him being denied access to the ballot, despite the fact that he filed with the Wayne County Clerk more than 1,000 otherwise-valid signatures. Conyers has and will continue to have his core First Amendment rights directly infringed absent declaratory and injunctive relief by

this Court, which can and will directly redress his injuries. He therefore has standing to seek the injunction being requested here.

**D.     The remaining preliminary-injunction factors favor Plaintiffs.**

Once the Court determines that Plaintiffs are likely to succeed on the merits of their First Amendment claims, a preliminary injunction is warranted. *See Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010) ("Because the plaintiffs have established a substantial likelihood of success on their free speech . . . claims, there appears to be no issue as to the existence of the remaining preliminary injunction factors."). The three remaining factors—irreparable harm to Plaintiffs, harm to others, and the public interest—all weigh in Plaintiff's favor.

<u>Irreparable Harm</u>

The "irreparable harm" factor is easily met. "[W]hen reviewing a motion for a preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." *ACLU of Kentucky v. McCreary County*, 354 F.3d 438, 445 (6th Cir. 2003). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). As demonstrated above, M.C.L. § 168.544c(3)'s voter registration requirement for petition circulators infringes on Plaintiffs' First Amendment rights. Therefore, this factor decidedly weighs in Plaintiffs' favor.

26

Harm to Others

The Sixth Circuit has held that "if the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville*, 274 F.3d 377, 400 (6th Cir. 2001). Here, because Plaintiffs have shown a likelihood of success on the merits of their claims asserting constitutional violations by Defendants, there is no harm to Defendants or others as to justify withholding injunctive relief.

Public Interest

The final factor is whether the public interest will be served by an injunction. Again, Plaintiffs' likelihood of success on the merits of its claims largely disposes of the "public interest" factor. "When a constitutional violation is likely, . . . the public interest militates in favor of injunctive relief because it is always in the public interest to prevent violation of a party's constitutional rights." *Miller*, 622 F.3d at 540 (internal quotation marks omitted). In this case, the public-interest factor weighs in favor of preliminary injunctive relief because, as demonstrated above, "a constitutional violation is likely." *Id.*

## CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court immediately enjoin Defendants from enforcing the voter registration requirements of M.C.L.

§ 168.544c(3) and order Defendants to place Congressman Conyers on the primary ballot or, alternatively, order Defendants to reexamine the petitions without excluding signatures pursuant to the voter registration requirements of M.C.L. § 168.544c(3).

Respectfully submitted,

/s/ Michael J. Steinberg
Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
Brooke A. Tucker-Merriweather
Daniel S. Korobkin (P72842)
American Civil Liberties Union Fund
   of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6824
msteinberg@aclumich.org
kmoss@aclumich.org
btucker@aclumich.org
dkorobkin@aclumich.org

/s/ Mary Ellen Gurewitz
Mary Ellen Gurewitz (P25724)
Sachs Waldman, PC
Cooperating Attorney, ACLU
Fund of Michigan
2211 East Jefferson Ave., Suite 200
Detroit, MI 48207
(313) 965-3464
megurewitz@sachswaldman.com

Attorneys for Plaintiffs Moore,
Willis-Pittman and Terry

Dated: May 15, 2014

/s/ Andrea L. Hansen
John D. Pirich (P23204)
Andrea L. Hansen (P47358)
Honigman Miller Schwartz
   & Cohn LLP
222 North Washington Square
Suite 400
Lansing, MI 48933
(517) 377-0712
jpirich@honigman.com
ahansen@honigman.com

Attorneys for Plaintiff
John Conyers, Jr.

28