UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDERL EDNA MOORE and TIARA WILLIS-
PITTMAN, CHINITA TERRY, and JOHN
CONYERS, JR.,

      Plaintiffs,

v

RUTH JOHNSON, in her official capacity as
the Secretary of State, CATHY M. GARRETT,
in her individual capacity and in her official
capacity as the Wayne County Clerk,

      Defendant.

Case No: 2:14-cv-11903

HON. MATTHEW F. LEITMAN

Eric E. Doster (P41782)
Foster, Swift, Collins & Smith, P.C.
Attorneys for Rev. Horace
Sheffield, III and Richard D. Jones
313 S. Washington Square
Lansing, MI  48933
(517) 371-8241
edoster@fosterswift.com

## REV. HORACE SHEFFIELD, III AND RICHARD D. JONES' CORRECTED RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

Rev. Horace Sheffield, III and Richard (Rick) D. Jones, by and through their attorneys, Foster, Swift, Collins & Smith, P.C., respond in opposition to Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction (Dk. 15). Rev. Sheffield and Mr. Jones further rely upon their Response Brief in Opposition.

WHEREFORE, Rev. Sheffield and Mr. Jones respectfully request that this Court deny Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction, and to deny all injunctive relief sought by Plaintiffs in this case.

Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.
Attorneys for Rev. Horace Sheffield, III and
Richard D. Jones

Dated: May 18, 2014                By:   /s/ Eric E. Doster
                                         Eric E. Doster (P41782)
                                         313 S. Washington Square
                                         Lansing, MI 48933
                                         (517) 371-8241
                                         edoster@fosterswift.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDERL EDNA MOORE and TIARA WILLIS-
PITTMAN, CHINITA TERRY, and JOHN
CONYERS, JR.,

Case No: 2:14-cv-11903

HON. MATTHEW F. LEITMAN

      Plaintiffs,

v

RUTH JOHNSON, in her official capacity as
the Secretary of State, CATHY M. GARRETT,
in her individual capacity and in her official
capacity as the Wayne County Clerk,

      Defendant.

---

Eric E. Doster (P41782)
Foster, Swift, Collins & Smith, P.C.
Attorneys for Rev. Horace
Sheffield, III and Richard D. Jones
313 S. Washington Square
Lansing, MI  48933
(517) 371-8241
edoster@fosterswift.com

---

## REV. HORACE SHEFFIELD, III AND RICHARD D. JONES' CORRECTED RESPONSE BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

May 18, 2014

# TABLE OF CONTENTS

ISSUES PRESENTED ........................................................................................... ii

CONTROLLING AUTHORITY ........................................................................... iii

INDEX OF AUTHORITIES ................................................................................. iv

INTRODUCTION ................................................................................................ 1

MICHIGAN'S ELECTION PROCEDURES ......................................................... 2

FACTUAL BACKGROUND ................................................................................ 3

PROCEDURAL BACKGROUND ........................................................................ 4

ARGUMENT ....................................................................................................... 5

I.     Laches, Unclean Hands, and Potential Mootness Bar Plaintiffs' Claims ........................... 5

      A.     Laches Bars Plaintiffs' Claims ................................................................ 6

      B.     The Unclean Hands Doctrine Bars Equitable Relief ................................ 9

      C.     Plaintiffs' Claims May Become Moot ..................................................... 11

II.    This Court Should Deny Injunctive Relief Because the Balancing of Relevant Factors Weighs Against Changing the Rules for the Primary Election at this Late Stage ....................... 13

      A.     Standard of Review for Injunctive Relief .............................................. 13

      B.     The Balancing Test Weighs Against Injunctive Relief ........................... 14

            1.     Self-Created Harm Resulting from Plaintiffs' Delay Does Not Support Injunctive Relief ............................................................ 14

            2.     Entering Injunctive Relief Changing the Nominating Petition Requirements for the August 5, 2014 Primary After the Petition Deadline Has Passed Will Cause Substantial Harm to Others and Will Not Serve the Public Interest ....................................... 17

            3.     For the Purposes of the August 5, 2014 Primary Election, *Anderson*'s Balancing Test Weighs Against Changing the Election Process Midstream ...................................................... 19

CONCLUSION AND REQUEST FOR RELIEF ................................................. 21

CERTIFICATE OF SERVICE ............................................................................ 22

## **ISSUES PRESENTED**

1.      Whether Plaintiffs' claims are barred by laches?

2.      Whether the unclean hands doctrine bars equitable relief?

3.      Whether this Court should deny Plaintiffs' Motion for Temporary Restraining Order and/or Injunctive Relief under the balancing analysis employed by this Court?

## CONTROLLING AUTHORITY

U.S. Const. art. I, § 4, cl. 1.

Const. 1963, art. II, § 4.

*Costello v. United States*, 365 U.S. 265, 282; 81 S.Ct. 534; 5 L.Ed. 2d 551 (1961).

*Nader v. Blackwell*, 545 F.3d 459, 478-79 (6th Cir. 2008).

*Perry v. Judd*, 471 Fed. Appx. 219, 227 (4th Cir. 2012).

*SEIU Local 1 v. Husted*, 698 F.3d 341, 345 (6th Cir. 2012).

Fed. R. Civ. P. 65.

## INDEX OF AUTHORITIES

**Cases**

*Ailor v. City of Maynardville*, 368 F.3d 587, 596 (6th Cir. 2004) .................................................. 11

*Anderson v. Celebrezze*, 460 U.S. 780, 788, 75 L.Ed. 2d 547, 103 S.Ct. 1564 (1983) ...............................................................................................................17, 18, 19, 20

*Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 80 L. Ed. 688, 56 S. Ct. 466 (1936) (Brandeis, J. concurring) ................................................................ 5, 6

*Blankenship v. Blackwell*, 341 F.Supp. 2d 911 (S.D. Ohio 2004), appeal dismissed, 429 F.3d 254 (6th Cir. 2005)................................................................................... 9, 10, 12

*Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 119 L.Ed. 2d 245 (1992)...................... 20

*Burson v. Freeman*, 504 U.S. 191, 199, 112 S.Ct. 1846, 119 L.Ed. 2d 5 (1991) .................. 17, 20

*Burton v. United States*, 196 U.S. 283, 295, 25 S. Ct. 243, 49 L. Ed. 482 (1905)......................... 6

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) ................................................................................................................. 13

*Chirco v. Crosswinds Cmtys., Inc.*, 474 F.3d 227, 231 (6th Cir. 2007)......................................... 6

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed. 2d 313 (1985).................................................................................................................... 19

*County of Los Angeles v. Davis*, 440 U.S. 625, 631; 99 S.Ct. 1379; 59 L.Ed. 2d 642 (1979) ..... 11

*Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed. 2d 551 (1961) ................ iii, 6

*Detroit Newspaper Publishers Association v. Detroit Typographical Union No. 18*, 471 F.2d 872, 876 (6th Cir. 1972)................................................................................................ 13

*Fishman v. Schaffer*, 429 U.S. 1325, 1330, 97 S. Ct. 14, 50 L. Ed. 2d 56 (1976)........................ 7

*Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990)................................................................. 6

*Hendon v. North Carolina State Board of Elections*, 710 F. 2d 177 (4th Cir. 1983) ................... 15

*Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980) ........................................................................ 16

*Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) .............................................................. 13

*Lee v. Christian Coal. of America, Inc.*, 160 F. Supp. 2d 14, 33 (D.D.C. 2001).......................... 14

*Libertarian Party v. Husted*, No. 2:13-cv-953, 2014 U.S. Dist. LEXIS 49841, *34 (S.D. Ohio Mar. 19, 2014)................................................................................................................ 14

*Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C.*, 717 F.Supp. 2d 724, 740 (E.D. Mich. 2010) ................................................................................... 14

*Maynard v. Stillson*, 108 Mich. 419, 424, 66 N.W. 388 (1896) ..................................... 18

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ......................................................... 13

*McCartney v. Mayor of City of Norton Shores*, 122 Mich. App. 311, 313, 332 N.W.2d 426 (1982) ................................................................................................................................ 18

*McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) .............. 12

*Michigan v. Herman*, No. 5:98-cv-16, 1998 U.S. Dist. LEXIS 9878, *10 (W.D. Mich. Feb. 10, 1998) ................................................................................................................................ 14

*Nader v. Blackwell*, 545 F.3d 459, 478-79 (6th Cir. 2008) .......................................... iii, 9, 11, 12

*N.C. Constitution Party v. Bartlett*, No. 3:12-cv-00192, 2012 U.S. Dist. LEXIS 65453 (W.D.N.C May 10, 2012) ..................................................................................................................... 8

*Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002) ................................................................................................................................... 13

*Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1383 (6th Cir. 1995) .................... 9

*Perry v. Judd*, 840 F.Supp. 2d 945, 949 (E.D. Va. 2012) ........................................... 1, 16

*Perry v. Judd*, 471 Fed. Appx. 219, 227 (4th Cir. 2012) ................................................. iii, 7, 8, 9

*Plain Dealer Pub. Co. v. Cleveland Typographical Union*, 520 F.2d 1220, 1230 (6th Cir. 1975) ................................................................................................................................... 6

*Purcell v. Gonzalez*, 549 U.S. 1, 4, 127 S.Ct. 5, 166 L.Ed. 2d 1(2006) ....................... 17

*SEIU Local 1 v. Husted*, 698 F.3d 341, 345 (6th Cir. 2012) ....................................... iii, 16

*Smith v. State Election Comm'n*, 874 F.Supp. 2d 483, 499 (D.S.C. 2012) ...................... 8

*Socialists Workers Party v. Sec'y of State*, 412 Mich. 571, 317 N.W.2d 1 (1982) ..................... 18

*Storer v. Brown*, 415 U.S. 724, 730; 94 S.Ct. 1274; 39 L.Ed. 2d 714 (1974) ............................ 17

*Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir. 1993) ................ 18

*Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 879 (1st Cir. 1995) ...................... 6

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 366, 117 S.Ct. 1364, 137 L.Ed. 2d 589 (1997) ............................................................................................................................. 17, 20

*Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005) .................................... 13

*Westermann v. Nelson*, 409 U.S. 1236, 1236-37, 93 S.Ct. 252, 34 L Ed. 2d 207 (1972).............. 7

*Williams v. Rhodes*, 393 U.S. 23, 34-35, 89 S.Ct. 5, 21 L.Ed. 2d 24 (1968)................................ 7

## Constitution

U.S. Const. art I, § 4, cl. 1 ...........................................................................iii, 2, 17, 19

Const. 1963, art. II, § 4 .........................................................................iii, 2, 17, 18, 19

## Statutes

M.C.L. 168.133 ............................................................................................ 3

M.C.L. 168.472a ........................................................................................... 7

M.C.L. 168.542 ............................................................................................ 2

M.C.L. 168.544c ................................................................................... passim

M.C.L. 168.544f ........................................................................................... 3

M.C.L. 168.552 ......................................................................................... 3, 12

M.C.L. 168.572 ............................................................................................ 3

M.C.L. 168.737a .......................................................................................... 3

## Rules

Fed. R. Civ. P. 65 .................................................................................... iii, 13

## INTRODUCTION

**"In essence, they played the game, lost and then complained that the rules were unfair."** *Perry v. Judd*, 840 F.Supp. 2d 945, 949 (E.D. Va. 2012).

Plaintiffs' lawsuit asks this Court to change the requirements of the Michigan Election Law midstream. Since 1966, M.C.L. 168.544c(3) has required nominating petition circulators to be registered voters in Michigan. Representative Conyers has complied with this requirement over twenty times in his prior successful campaigns. But this year, now that the election process is ongoing, the deadline to file nominating petitions has passed, and the Wayne County Clerk has determined that Rep. Conyers' nominating petitions are insufficient, Plaintiffs seek to enjoin enforcement of the law on the grounds that it is unconstitutional. Every other candidate who will be placed on the August 5, 2014 primary ballot, including Rev. Sheffield, will have had to comply with M.C.L. 168.544c(3)'s requirements. With respect to the upcoming primary, Rep. Conyers is seeking an exemption for himself that would result in unequal treatment of candidates. Plaintiffs could have filed suit long ago, well before the April 22, 2014 deadline to submit nominating petitions; instead, they waited until May 13 and 15, 2014 to file suit, after the petitions were determined to be insufficient, to complain that these 48 year old rules were unfair. Significantly, although Plaintiffs are demanding the "extraordinary and drastic remedy" of a preliminary injunction, Plaintiffs cite no cases where a candidate has been granted **retroactive** relief to appear on a primary ballot after the candidate's petitions were invalidated for failure to comply with a registered voter circulator requirement. In fact, the closest case to the present situation, *Perry v. Judd* (which denied such retroactive relief) is nowhere to be found in Plaintiffs' pleadings to this Court.

And now two separate appeals to the Secretary of State have been filed under Michigan law with respect to Rep. Conyers' nominating petitions. One of these appeals alleges the same

constitutional challenges before this Court; the other appeal alleges an independent basis for invalidating Rep. Conyers' nominating petitions that, if accepted, would render moot any relief requested of this Court.

By sleeping on their rights and waiting until after State proceedings have begun, Plaintiffs have created a situation where the balancing of preliminary injunction factors weighs heavily against granting relief. Because of Plaintiffs' delay, the doctrines of laches and unclean hands, as well as the compelling judicial dictate to avoid interference with an ongoing electoral process, preclude their request for equitable relief with respect to the August primary election. This Court should deny Plaintiffs' motion and decline to disrupt the August 5, 2014 primary election at this late hour.

## MICHIGAN'S ELECTION PROCEDURES

The United States Constitution places the power to set election procedure squarely with the State Legislatures. "The Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof. . . ." U.S. Const. art. I, § 4, cl. 1. The Michigan Constitution also gives this power to the Legislature, and compels them to "preserve the purity of elections":

> **The legislature shall enact laws to regulate the time, place and manner of all nominations and elections, except as otherwise provided in this constitution or in the constitution and laws of the United States. The legislature shall enact laws to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting.** [Const. 1963, art. II, § 4 (emphasis added).]

Pursuant to explicit Constitutional authority, the Michigan Legislature enacted the Michigan Election Law, which requires persons to take certain steps in order to be listed on an official ballot for any primary election. M.C.L. 168.542. For instance, Michigan law requires persons seeking election to represent the 13th Congressional District to submit nominating

petitions containing at least 1,000 signatures of qualified and registered electors.   M.C.L. 168.544f.  Since 1966, Michigan law has required nominating petition circulators to be registered Michigan voters:

> **At the time of circulation, the circulator of a petition shall be a registered elector of this state. At the time of executing the certificate of circulator, the circulator shall be registered in the city or township indicated in the certificate of circulator on the petition.** However, the circulator of a petition under section 482, a qualifying petition for an office named in section 590b(4), or a petition to form a new political party under section 685 either shall be a registered elector of this state or qualified to be a registered elector of this state at the time of circulation and at the time of executing the certificate of circulator, or, if not a resident of this state, shall be at least 18 years of age, a United States citizen, and shall sign an irrevocable written stipulation concerning legal process as provided in subsection (4).[1]  [MCL 168.544c(3) (emphasis added); 1965 PA 312]

The deadline to submit nominating petitions for the August 5, 2014 primary was April 22, 2014.  M.C.L. 168.133.  Michigan law provides for a means to appeal any decision regarding the propriety of nominating petitions to the Secretary of State and/or State circuit courts.  M.C.L. 168.552.  For candidates who do not comply with election procedures to appear on the ballot, Michigan law offers the opportunity to qualify as a write-in candidate.  M.C.L. 168.572; M.C.L. 168.737a.

## FACTUAL BACKGROUND

On April 22, 2014, Rev. Sheffield filed nominating petitions with the Wayne County Clerk, seeking to be allowed to run as a Democratic candidate for election to the 13th Congressional District in the August 5, 2014 primary election.   These petitions contained

---

[1] Note that M.C.L. 168.544c was amended by 2014 PA 94, which took effect on April 3, 2014. The amendment did not change the portion of Section 3 that pertains to nominating petitions. The amendment rewrote the last sentence of M.C.L. 168.544c(3), which formerly read: "However, the circulator of a petition under section 482 need only be qualified to be a registered elector of this state at the time of circulation and at the time of executing the certificate of circulator."

approximately 2,000 signatures.   Michigan law requires 1,000 signatures of qualified and registered electors for nominating petitions for this office. M.C.L. 168.544f; (See Dk. 12, ¶ 26).

U.S. Congressman John Conyers, Jr. has served twenty-four terms in the U.S. House of Representatives. (Dk. 12, ¶ 23). On April 18, 2014, Rep. Conyers filed nominating petitions with the Wayne County Clerk, also seeking to appear on the ballot as a Democratic candidate for the 13th Congressional District in the August 5, 2014 primary election. According to the Secretary of State website, these petitions contained 2,000 signatures. (See Dk. 12, ¶ 27).

On April 29, 2014, Richard (Rick) D. Jones, campaign manager for Rev. Horace Sheffield, filed a sworn written complaint with the Wayne County Clerk, questioning the petitions filed for Rep. Conyers. In accordance with M.C.L. 168.552, the Wayne County Clerk then commenced an investigation. On May 9, 2014, the Wayne County Clerk made public its staff report concerning the challenge. On May 13, 2014, the Wayne County Clerk made an official declaration that Rep. Conyers filed 592 valid signatures. On May 14, 2014, Rev. Sheffield and Mr. Jones filed a written request to the Secretary of State to have the Wayne County Clerk's determination reviewed. (Exhibit 1). On May 16, 2014, Rep. Conyers, by the same attorneys representing him in this case, filed a written request for review with the Secretary of State. (Exhibit 2). In this review, Rep. Conyers asserted that M.C.L. 168.544c(3) is unconstitutional. (Exhibit 2, pp. 11-13). The Secretary of State's review is ongoing.

## PROCEDURAL BACKGROUND

While the investigation of Rep. Conyers' nomination petitions was pending, on May 6, 2014, Plaintiff Robert Davis filed a lawsuit as a school board candidate to challenge the constitutionality of M.C.L. 168.544c(3). (Case No. 2:14-cv-11818; Dk. 1). On May 7, 2014, Mr. Davis filed a motion seeking a temporary restraining order. (Dks. 5-6). This Court required Defendants to respond to Mr. Davis' Motion by May 15, 2014. (Dk. 17). On May 15, 2014,

Rev. Sheffield and Mr. Jones filed a Motion and Brief in Support of Motion for Leave to File Brief as Amici Curiae, with proposed Amici Curiae Brief responding in opposition to the broad injunctive relief requested by Mr. Davis. (Dk. 19). This Court granted Rev. Sheffield and Mr. Jones' motion. (Text-only docket entry; Dk. 26).

Also while the investigation of Rep. Conyers' petition was pending, on May 12, 2014, Plaintiffs Ederl Edna Moore and Tiara Willis-Pittman filed this lawsuit as voters seeking to vote for Rep. Conyers and as a nominating petition circulator for Rep. Conyers, challenging the constitutionality of M.C.L. 168.544c(3). (Case No. 2:14-cv-11903; Dk. 1). Ms. Moore and Ms. Willis-Pittman asserted that their case was a companion to Mr. Davis' lawsuit. (Dk. 2). On May 13, 2014, the Court reassigned Ms. Moore and Ms. Willis-Pittman's action to the judge presiding over Mr. Davis' action, Judge Matthew F. Leitman. (Dk. 6). The Court required Ms. Moore and Ms. Willis-Pittman to file any motion for injunctive relief by May 15, 2014 and noon and gave the Defendants until May 20, 2014 to respond. (Dk. 10).

Prior to noon on May 15, 2014, Rev. Sheffield and Mr. Jones filed a Motion to Intervene Under Fed. R. Civ. P. 24. (Dk. 14). Also on May 15, Plaintiffs filed a First Amended Complaint, which added Chinita Terry and Rep. Conyers as Plaintiffs, and a Motion for Temporary Restraining Order and/or Preliminary Injunction. (Dks. 12, 15). The Court then granted Rev. Sheffield and Mr. Jones until Sunday, May 18, 2014 at noon to file a responsive brief opposing Plaintiffs' motion. (Dk. 22). Rev. Sheffield and Mr. Jones now respond in opposition to Plaintiffs' motion.

## **ARGUMENT**

### I.    **Laches, Unclean Hands, and Potential Mootness Bar Plaintiffs' Claims**

Federal courts are obligated not to "decide questions of a constitutional nature unless absolutely necessary to a decision of the case." *Ashwander v. Tennessee Valley Authority*, 297

U.S. 288, 347; 80 L.Ed. 688; 56 S.Ct. 466 (1936) (Brandeis, J. concurring); see also *Burton v. United States*, 196 U.S. 283, 295; 25 S.Ct. 243; 49 L.Ed. 482; (1905) ("It is not the habit of the Court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case."). Regardless of the merits of Plaintiffs' constitutional argument, this Court should not disrupt the ongoing election process in races where the deadline to file nominating petitions has already passed. "Injunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." *Plain Dealer Pub. Co. v. Cleveland Typographical Union*, 520 F.2d 1220, 1230 (6th Cir. 1975) (citation omitted). The doctrines of laches and unclean hands, as well as potential mootness, preclude such equitable relief here.

## A.    Laches Bars Plaintiffs' Claims

"A party asserting laches must show:  (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Chirco v. Crosswinds Cmtys., Inc.*, 474 F.3d 227, 231 (6th Cir. 2007) (quotation and citation omitted); *Costello v. United States*, 365 U.S. 265, 282; 81 S.Ct. 534; 5 L.Ed. 2d 551 (1961). "Laches does not result from a mere lapse of time but from the fact that, during the lapse of time, changed circumstances inequitably work to the disadvantage or prejudice of another if the claim is now to be enforced." *Id.* "In the context of elections, this means that any claim against a state electoral procedure must be expressed expeditiously." *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990). For "equity ministers to the vigilant, not to those who sleep upon their rights." *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 879 (1st Cir. 1995).

First, there can be no question that Plaintiffs long delayed in filing suit.  M.C.L. 168.544c(3)'s circulator registration requirement has been in place since 1966. 1965 PA 312. Rep. Conyers has complied with the statute in his past elections to Congress; indeed, he has complied with the statute twenty-three times. Circulation of nominating petitions for Rep.

Conyers for this primary could have started January 1, 2013, as the 180-day "staleness" requirement under the Michigan Election Law only applies to ballot question petitions. *See* M.C.L. 168.472a. Rep. Conyers could have challenged the constitutionality of this law long ago, and certainly before the nominating petition deadline of April 22, 2014 passed.

But instead, Plaintiffs waited to file suit until May 12, 2014, with Rep. Conyers not joining the suit until May 15, 2014. Plaintiffs' delay is in sharp contrast to Plaintiff Robert Davis in the companion case, who filed suit well before the nominating petition deadline for school board candidates like himself. By filing this suit well after the nomination petition deadline, Plaintiffs here have slept on their rights.

Second, Plaintiffs' delay will make any injunctive relief affecting the 2014 primary highly prejudicial. "[A]pplications for a preliminary injunction granting ballot access have been consistently denied when they threaten to disrupt an orderly election." *Perry v. Judd*, 471 Fed. Appx. 219, 227 (4th Cir. 2012) (affirming district court's denial of emergency motion to place Texas Governor Rick Perry on the ballot in Virginia Republican Primary based on laches).

Numerous courts have refused to issue injunctive relief that would disrupt an ongoing election process. See *Fishman v. Schaffer*, 429 U.S. 1325, 1330; 97 S.Ct. 14; 50 L.Ed. 2d 56 (1976) (Marshall, J., Circuit Justice) (denying ballot access injunction in part on the ground that "applicants delayed unnecessarily in commencing [the] suit" until "[t]he Presidential and overseas ballots have already been printed; some have been distributed[, and t]he general absentee ballots are currently being printed."); *Westermann v. Nelson*, 409 U.S. 1236, 1236-37; 93 S.Ct. 252; 34 L.Ed. 2d 207 (1972) (Douglas, J., Circuit Justice) (denying injunction "not because the cause lacks merit but because orderly election processes would likely be disrupted by so late an action."); *Williams v. Rhodes*, 393 U.S. 23, 34-35; 89 S.Ct. 5; 21 L.Ed. 2d 24 (1968) (denying a political party's ballot access request, despite the unconstitutionality of the

relevant statute, because "relief cannot be granted without serious disruption of election process"); *Smith v. State Election Comm'n.*, 874 F.Supp. 2d 483, 499 (D.S.C. 2012) ("[T]he only relief available at this late date would prejudice Defendants. The court, therefore, finds that the doctrine of laches tips the balance of equities in Defendants' favor.") (denying motion for temporary restraining order filed by disqualified candidates seeking to restore their names to the primary ballot); *N.C. Constitution Party v. Bartlett*, No. 3:12-cv-00192, 2012 U.S. Dist. LEXIS 65453 (W.D.N.C May 10, 2012) (holding laches barred the plaintiffs' request for injunctive relief even where their lawsuit was filed **prior** to the petition deadline, given the plaintiffs' lack of diligence).

*Perry v. Judd*, *supra*, 471 Fed. Appx. 219, is particularly demonstrative of why this Court should not grant broad relief that will have consequences in elections where the deadline has passed. In *Perry*, would-be Presidential candidate Rick Perry filed a complaint for declaratory and injunctive relief challenging Virginia's residency requirement for nominating petition circulators after the Virginia State Board of Elections determined he did not have enough valid signatures to be placed on the ballot. *Id*. at 222. The district court denied the plaintiffs' motion for temporary restraining order and preliminary injunction because the equitable doctrine of laches barred their request for relief. The district court "found that plaintiffs could have brought their constitutional challenge to Virginia's residency requirement for petition circulators as soon as they were able to circulate petitions in the summer of 2011, but instead chose to wait until after the December 22, 2011 deadline before seeking relief." *Id*. "The district court concluded this delay displayed an unreasonable and inexcusable lack of diligence on plaintiffs' part that has significantly harmed the defendants." *Id*.

Perry then sought an emergency motion from the Fourth Circuit to have his name placed on the primary ballot. *Id*. at 223. The Fourth Circuit denied his motion: "We cannot grant

Movant's request for this extraordinary remedy.   We find it unnecessary to address whether Movant would likely succeed in his constitutional challenges because the district court was correct in concluding the defense of laches bars the requested relief on the instant motion in any event." *Id*. at 224.

This case is indistinguishable from *Perry*.   Here, Plaintiffs ask this Court to grant injunctive relief that would exempt Rep. Conyers from the nominating petition requirement of M.C.L. 168.544c(3) even though the deadline for the filing of such petitions has passed.   Just as the district court and Fourth Circuit determined in *Perry*, the doctrine of laches bars any award of equitable relief that would change the election requirements at this late hour.

### B.      The Unclean Hands Doctrine Bars Equitable Relief

Plaintiffs' motion relies on the holding in *Nader v. Blackwell*, 545 F.3d 459, 478-79 (6th Cir. 2008), an action for money damages brought and decided long after the election in which disputed petitions were involved.   (See, e.g., Dk. 15, p. 1).   The more relevant guidance comes from earlier proceedings in the *Nader* litigation, where injunctive relief was denied due to false statements in circulator petitions, resulting in the application of the unclean hands doctrine.   "The concept of unclean hands may be employed by the court to deny injunctive relief where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party."   *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1383 (6th Cir. 1995).

In the pre-election *Nader* proceedings, the plaintiffs asked for injunctive relief to allow Ralph Nader to be placed on the ballot and the district court refused to grant an injunction. *Blankenship v. Blackwell*, 341 F.Supp. 2d 911 (S.D. Ohio 2004) (denying application for temporary restraining order and motion for preliminary injunction), appeal dismissed, 429 F.3d 254 (6th Cir. 2005).   Because many of the signatures submitted on Nader's behalf were false, the

court refused to grant injunctive relief.  The court agreed that the unclean hands doctrine was a basis to deny the plaintiffs' requested relief.  *Id.*, 341 F. Supp. at 924.  The district court declined to "delve into the constitutional issue presented" in light of the false statements and fraud.  *Id.* at 923.

The Sixth Circuit also refused to grant the plaintiffs' request for an emergency injunction, noting that "The Ohio Secretary of State had state statutory grounds independent of the registration and residency requirements to reject the disputed circulators' petitions:  election falsification, a felony in Ohio."  *Blankenship*, 429 F.3d at 257 (quoting Sixth Circuit ruling on the emergency motion).  "Given this state law ground, this court will not reach the issue of whether the challenged registration and residency requirements violate the First Amendment."  *Id*.  The plaintiffs then appealed the Sixth Circuit's denial of their emergency motion, but the Sixth Circuit dismissed the appeal:  "In light of Appellants' refusal to challenge Ohio's circulator-residency requirement until more than seven months after Nader announced his candidacy—and even then only after many of the petitions had been disallowed for fraud—we cannot say they are mere victims of the vagaries of circumstance."  *Id*. at 259.

As in Ohio, the Michigan Election Law also prohibits false statements in circulator petitions.  M.C.L. 168.544c(11) provides:

> (11) An individual shall not do any of the following:
>      (a) Sign a petition with a name other than his or her own.
>      (b) Make a false statement in a certificate on a petition.
>      (c) If not a circulator, sign a petition as a circulator.
>      (d) Sign a name as circulator other than his or her own.

The Michigan Election Law also makes false certification a crime.  M.C.L. 168.544c(12). The Wayne County Clerk has determined that several of Rep. Conyers' nominating petition circulators were not registered to vote or registered in a different jurisdiction at the time of their petition activity.  However, these circulators signed and submitted false statements in a circulator

certificate attesting that they were properly registered to vote.  These false statements and signatures violate M.C.L. 168.544c(11).  Rev. Sheffield and Mr. Jones have raised the fact that Rep. Conyers' nominating petitions contain false statements in their pending Secretary of State review.  The signatures should be disallowed, not just because the circulators were not registered voters, but because the circulators made false statements in a circulator certificate.  The false certification by circulators threatens the integrity of the petition and nomination process, and provides an independent and valid ground for disqualifying the signatures at issue here.  According to the *Nader* cases relied upon by Plaintiffs here, false statements such as those discovered by the Wayne County Clerk, preclude equitable relief.  *See Nader*, 545 F.3d at 469.

### C.    Plaintiffs' Claims May Become Moot

Pending state agency and potential court proceedings will determine whether Rep. Conyers will be removed from the primary election ballot due to his noncompliance with the Michigan Election Law.  The statute at issue in this litigation—M.C.L. 168.544c(3)—is not the only potential ground for invalidating Rep. Conyers' nominating petitions.  Plaintiffs ask this Court to declare Rep. Conyers' nominating petitions sufficient (Dk. 15, p. 1), but even if this Court were to enjoin enforcement of M.C.L. 168.544c(3) with respect to the August primary, Rep. Conyers' nominating petitions are still insufficient because of M.C.L. 168.544c(11).

Courts lack judicial power to entertain and decide moot cases.  *County of Los Angeles v. Davis*, 440 U.S. 625, 631; 99 S.Ct. 1379; 59 L.Ed. 2d 642 (1979).  A case is moot where the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.  *Id*.  If events occur that prevent the court from giving meaningful relief, the case is moot and must be dismissed.  *Ailor v. City of Maynardville*, 368 F.3d 587, 596 (6th Cir. 2004).  "The test for mootness is whether the relief sought would, if granted, make a difference to the

legal interests of the parties." *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (quotation omitted).

The Michigan Election Law provides for state agency and court proceedings, which are already in progress with respect to whether Rep. Conyers will be removed from the ballot for the 13th Congressional district primary election. M.C.L. 168.552(2) requires a county clerk to "commence an investigation" if the clerk receives a sworn written complaint questioning the nominating petitions. Here, Mr. Jones filed such a sworn written complaint on April 29, 2014 questioning Rep. Conyers' nominating petitions, which triggered a Wayne County Clerk investigation and determination on May 13, 2014 that Rep. Conyers' petitions were insufficient. M.C.L. 168.552(6) allows persons "feeling aggrieved" by the county clerk's determination on the nominating petition challenge to seek review of the clerk's determination with the Secretary of State or with the appropriate Michigan circuit court.

On May 14, 2014, Rev. Sheffield and Mr. Jones sought such review from the Secretary of State. (Exhibit 1). In part, this review asks the Secretary of State to recognize that filing a false circulator certificate, which is a violation of M.C.L. 168.544c(11), is a separate and independent reason for invalidating the nominating petitions at issue in the present case. If the Secretary of State or a Michigan court grants this request, any relief requested of this Court would be rendered moot. *See Nader v. Blackwell*, 543 F.3d 549 (6th Cir. 2008), where filing a false circulator certificate under Ohio law is an independent reason to invalidate a nominating petition. *See also, Blankenship v. Blackwell*, 341 F.Supp. 911, 924 (S.D. Ohio 2004) ("In this case, even if the residency requirement were held to be unconstitutional, Ohio law would require the invalidation of all names on petitions signed by circulators who fraudulently claimed that they lived in Ohio"). Rep. Conyers also has a review pending with the Secretary of State. (Exhibit

2).  The Secretary's ongoing review may render this litigation moot by precluding Rep. Conyers from the primary ballot regardless of the constitutionality of M.C.L. 168.544c(3).

**II.     This Court Should Deny Injunctive Relief Because the Balancing of Relevant Factors Weighs Against Changing the Rules for the Primary Election at this Late Stage.**

### A.     Standard of Review for Injunctive Relief

Fed. R. Civ. P. 65 authorizes the issuance temporary restraining orders and preliminary injunctions.  "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis original).  "There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing an injunction [sic]."  *Detroit Newspaper Publishers Association v. Detroit Typographical Union No. 18*, 471 F.2d 872, 876 (6th Cir. 1972) (internal quotation omitted).  A preliminary injunction "should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)).

When considering a motion for preliminary injunction, a district court must balance four factors:  (1) whether the plaintiff has a strong likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction.  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citing *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)).

**B.      The Balancing Test Weighs Against Injunctive Relief**

      **1.      Self-Created Harm Resulting from Plaintiffs' Delay Does Not Support Injunctive Relief**

Plaintiffs have failed to show irreparable harm flowing from the alleged unconstitutional statute because their harm is self-inflicted.   "Not surprisingly, a party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted." *Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C.*, 717 F.Supp. 2d 724, 740 (E.D. Mich. 2010) (quotation and citation omitted). *See Lee v. Christian Coal. of America, Inc.*, 160 F.Supp. 2d 14, 33 (D.D.C. 2001) (It is "well-settled that a preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted.") (internal citation and quotation marks omitted); *Michigan v. Herman*, No. 5:98-cv-16, 1998 U.S. Dist. LEXIS 9878, *10 (W.D. Mich. Feb. 10, 1998) ("An equitable principle similar to the clean hands doctrine is that a party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted.") (footnote and citations omitted).

Whether harm is self-inflicted has been considered even where the harm is keeping a candidate off the ballot:  "And while Plaintiffs will suffer the harm of being excluded from the Ohio May 2014 primary ballot, as well as the November 2014 general ballot, that harm was self-inflicted. Consequently, the Court finds Plaintiffs will not suffer the requisite irreparable harm in the absence of a preliminary injunction." *Libertarian Party v. Husted*, No. 2:13-cv-953, 2014 U.S. Dist. LEXIS 49841, *34 (S.D. Ohio Mar. 19, 2014).

The voter registration requirements of M.C.L. 168.544c have been in force since January 1, 1966.  1965 PA 312.  Rep. Conyers has been in office since 1965, (Dk. 12, ¶ 23), so he has known about, and complied with, this requirement for decades.  Moreover, since each of Rep. Conyers' circulators executed a certificate (see M.C.L. 168.544c(1)) attesting that they were

registered voters, this requirement was clearly known to the other Plaintiffs.   Consequently, two self-inflicted wounds caused any injury to the Plaintiffs here, not an alleged unconstitutional statute.

First, the Plaintiffs waited until after the nomination petition filing deadline to challenge M.C.L. 168.544c(3).   Long before the nominating petitions were due, Plaintiffs could have challenged the constitutionality of M.C.L. 168.544c(3)'s registration requirement.   Had Plaintiffs acted in a timely manner, the courts could have addressed the merits of their constitutional challenge without any risk of disrupting the 2014 primary election process or creating the unfair situation where one candidate is potentially exempt from a requirement with which all others had to comply.   According to *Hendon v. North Carolina State Board of Elections*, 710 F. 2d 177 (4th Cir. 1983):

> Courts have imposed a duty on parties having grievances based on election laws to bring their complaints forward for pre-election adjudication when possible. They have reasoned that failure to require pre-election adjudication would "permit, if not encourage, parties who could raise a claim 'to lay by and gamble upon receiving a favorable decision of the electorate' and then, upon losing, seek to undo the ballot results in a court action." *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973). Accord *Chinese for Affirmative Action v. Leguennec*, 580 F.2d 1006, 1008 (9th Cir. 1978); *Hart v. King*, 470 F. Supp. 1195, 1197-98 (D. Hawaii 1979). [*Id.* at 182.]

For example, in *Hendon*, the Fourth Circuit agreed with the plaintiffs that certain statutes were unconstitutional.   *Id.*   However, because the plaintiffs failed to challenge the procedure prior to the election, injunctive relief was denied.   Instead, the Court properly afforded prospective relief:   "The corollary to judicial reluctance to interfere with election results is the obligation to afford prospective relief." *Id.*   Likewise, here Plaintiffs could have pursued their action prior to the nominating petition deadline; their delay should preclude retroactive relief that would change the rules of the 2014 primary election.

15

"As a general rule, last-minute injunctions changing election procedures are strongly disfavored." *SEIU Local 1 v. Husted*, 698 F.3d 341, 345 (6th Cir. 2012). "The plaintiffs' failure to act earlier in pursuing these claims significantly undermines their assertions of irreparable harm in the absence of the injunction." *Id*. at 345-46. "As time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made, and the candidate's claim to be a serious candidate who has received a serious injury becomes less credible by his having slept on his rights." *Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980) (holding laches barred a candidate's claim that was filed around three weeks after the choice of candidates was made).

Second, the obvious self-inflicted wound is that five of Rep. Conyers' petition circulators failed to register to vote or to properly reference the jurisdiction where they were registered, causing them to file false circulator certificates contrary to M.C.L. 168.544c(11). No one forced these five petition circulators to fail to properly register or file false circulator certificates. Since no court has determined that M.C.L. 168.544c(3) is unconstitutional, Rep. Conyers' petition circulators violated M.C.L. 168.544c(3) entirely at their own risk. If Rep. Conyers wanted to use non-registered circulators, his remedy was to challenge M.C.L. 168.544c(3) **before** the filing deadline has passed—just as the plaintiff in *Davis v. Johnson* is doing in the companion case to these proceedings.

Again: "In essence, they played the game, lost, and then complained that the rules were unfair." *Perry v. Judd*, 840 F.Supp. 2d 945, 949 (E.D. Va. 2012). Plaintiffs' self-inflicted injury is not irreparable harm and cannot support an injunction. To ignore that any harm suffered by Plaintiffs here is self-inflicted, allows Plaintiffs to achieve their "heads I win, tails you lose" justification for challenging their own violations of M.C.L. 168.544c(3) after the nomination filing deadline has passed.

16

2. **Entering Injunctive Relief Changing the Nominating Petition Requirements for the August 5, 2014 Primary After the Petition Deadline Has Passed Will Cause Substantial Harm to Others and Will Not Serve the Public Interest**

Disrupting the election process at this late hour would cause substantial harm to others and be contrary to the public interest in an orderly election.   When considering a request to enjoin election procedures, courts are "required to weigh, in addition to the harm attendant upon issuance or nonissuance of an injunction, considerations specific to election cases and [the State's] own institutional procedures." *Purcell v. Gonzalez*, 549 U.S. 1, 4, 127 S.Ct. 5; 166 L.Ed. 2d 1 (2006).   States have a compelling interest in enacting laws that ensure fairness in elections.   "[A]s a practical matter, there must be substantial regulation of elections if they are to be fair and honest and if some sort of order rather than chaos, is to accompany the democratic process." *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564; 75 L.Ed. 2d 547 (1983) (quoting *Storer v. Brown*, 415 U.S. 724, 730; 94 S.Ct. 1274; 39 L.Ed. 2d 714 (1974)).   "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election—and campaign—related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358; 117 S.Ct. 1364; 137 L.Ed. 2d 589 (1997).   "The Court has also recognized that a State indisputably has a compelling interest in preserving the integrity of its election process.   The Court thus has upheld generally applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself." *Burson v. Freeman*, 504 U.S. 191, 199; 112 S.Ct. 1846; 119 L.Ed. 2d 5 (1991) (quotations and citations omitted).

The United States Constitution makes it clear that State Legislatures are to control election procedures.   U.S. Const. art. I, § 4, cl. 1.   The Michigan Constitution specifically requires the Michigan Legislature to ensure election fairness: "The legislature shall enact laws to **preserve the purity of elections**, to preserve the secrecy of the ballot, to guard against abuses of

17

the elective franchise, and to provide for a system of voter registration and absentee voting." Const. 1963, art. II, § 4 (emphasis added).

Plaintiffs ask this Court to order unequal treatment of candidates seeking election to the same office in the August 5, 2014 primary. The April 22, 2014 deadline for submitting nominating petitions for the upcoming August 5, 2014 primary election has passed. For candidates seeking nomination of the August 5, 2014 primary election, it is too late to seek inclusion on the ballot even though their nominating petitions did not comply with the law. Plaintiffs' requested relief would exempt Rep. Conyers from the burden of M.C.L. 168.544c(3), while the vast majority of candidates would have had to comply with the statute to be on the same ballot in August.

Unequal treatment of candidates seeking to run in the August 5, 2014 primary election would violate the "purity of elections" Michigan's Constitution requires the Legislature to protect. "Although the 'purity of elections' concept has been applied in different factual settings, it unmistakably requires. . . fairness and evenhandedness in the election laws of this state." *Socialists Workers Party v. Sec'y of State*, 412 Mich. 571, 598; 317 N.W.2d 1 (1982). Uniformity and equal treatment are key elements of fairness in elections. "The law has attempted to provide uniform and strict regulations for elections." *Maynard v. Stillson*, 108 Mich. 419, 424; 66 N.W. 388 (1896). See *McCartney v. Mayor of City of Norton Shores*, 122 Mich. App. 311, 313; 332 N.W.2d 426 (1982) ("Although the election statute governing the marking of ballots may result in the loss of some votes, comprehensive and uniform guidelines are necessary in order to insure that elections are conducted fairly, impartially, and efficiently."). "[A] state has a strong interest in ensuring that its elections are run fairly and honestly." *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir. 1993) (citing *Anderson,* 460 U.S. at 788).

Further, treating candidates in the same election differently would violate the Equal Protection Clauses of the United States and Michigan Constitutions. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439; 105 S.Ct. 3249; 87 L.Ed. 2d 313 (1985). This Court should avoid midstream changes that are unfair to those candidates who have already followed the challenged law and complied with the registration requirement.

3. **For the Purposes of the August 5, 2014 Primary Election, *Anderson*'s Balancing Test Weighs Against Changing the Election Process Midstream**

Any burden imposed by M.C.L. 168.544c(3) on unregistered voters' First Amendment Free Speech right to circulate petitions for candidates in the August 5, 2014 primary is outweighed by the government's constitutionally recognized interest in "preserving the purity of elections." Const. 1963, art. II, § 4; see U.S. Const. art I, § 4, cl. 1. Rev. Sheffield and Mr. Jones take no position as to whether M.C.L. 168.544c(3) should be applied to future elections where the deadline to submit nominating petitions has not already passed, and defer to the position of the Secretary of State on this issue. However, the balancing test in *Anderson* weighs against granting any injunction that would change the rules for nominating petitions in elections, such as the 2014 primary, where the deadline to submit those petitions has passed.

As a general matter, state election laws that burden First Amendment rights are subject to the balancing test first laid out in *Anderson v. Celebrezze*, 460 U.S. 780, 788-90; 103 S.Ct. 1564; 75 L.Ed. 2d 547 (1983):

> Constitutional challenges to specific provisions of a State's election laws therefore cannot be resolved by any "litmus-paper test" that will separate valid from invalid restrictions. Instead, a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications

19

for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional. [460 U.S. at 789.]

*Anderson*'s balancing test is not strict scrutiny:  "to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest . . . would tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Burdick v. Takushi*, 504 U.S. 428, 433; 112 S.Ct. 2059; 119 L.Ed. 2d 245 (1992).  This balancing approach recognizes the States' compelling interest in protecting the integrity of elections:

> We have recognized that, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and is some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730, 94 S. Ct. 1274, 39 L. Ed. 2d 714 (1974). To achieve these necessary objectives, States have enacted comprehensive and sometimes complex election codes. Each provision of these schemes, whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects -- at least to some degree -- the individual's right to vote and his right to associate with others for political ends. [*Anderson*, 460 U.S. at 788.]

"States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election—and campaign—related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358; 117 S.Ct. 1364; 137 L.Ed. 2d 589 (1997).  "The Court has also recognized that a State indisputably has a compelling interest in preserving the integrity of its election process.  The Court thus has upheld generally applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself." *Burson,* 504 U.S. at 199 (quotations and citations omitted).

Disrupting the ongoing 2014 election process would cause the very type of disorder that the United States Constitution, Michigan Constitution, and Michigan Election Law seek to

prevent.  For the many reasons discussed above, elections require equal treatment of candidates and any injunctive relief that would change the 2014 primary would result in unequal treatment. Plaintiffs should not be permitted to change the rules of the ongoing election:  Plaintiffs slept on their rights by failing to challenge M.C.L. 168.544c(3) until after the deadline to file nominating petitions had passed, Plaintiffs filed false petitions, and state proceedings (as provided for in the Michigan Election Law) involving Plaintiffs' same questions are ongoing.  This Court should decline to cause disorder in the 2014 primary election, in the interest of upholding the integrity of Michigan's election system.

## CONCLUSION AND REQUEST FOR RELIEF

Plaintiffs' claims are barred by laches and unclean hands, and could become moot.  The balancing analysis employed by the courts when considering injunctive relief weighs against issuing an injunction that was not requested until after applicable filing deadlines have passed. Rev. Sheffield and Mr. Jones respectfully request that this Court deny Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction, and to deny all injunctive relief sought by Plaintiffs in this case.

Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.
Attorneys for Rev. Horace Sheffield, III and
Richard D. Jones

Dated: May 18, 2014          By:      /s/ Eric E. Doster
                                      Eric E. Doster (P41782)
                                      313 S. Washington Square
                                      Lansing, MI 48933
                                      (517) 371-8241
                                      edoster@fosterswift.com

21

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2014, I electronically filed the foregoing ***Rev. Horace Sheffield, III and Richard D. Jones' Corrected Response and Corrected Response Brief in Opposition to Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction*** with the Clerk of the Court using the ECF system which will send notification of such filing to all parties registered on this case.

By:      /s/ Eric E. Doster
Eric E. Doster (P41782)
313 S. Washington Square
Lansing, MI 48933
(517) 371-8241
edoster@fosterswift.com

31783:00001:1905671-1