UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDERL EDNA MOORE, AND
TIARE WILLIS-PITTMAN, CHINITA
TERRY, AND JOHN CONYERS, JR.,

        Plaintiffs,

v.

RUTH JOHNSON, in her official capacity
as Secretary of State, and CATHY M.
GARRETT, in her individual capacity and in
her official capacity as Wayne County Clerk,

        Defendants.

Hon. Matthew F. Leitman
Case No: 14-cv-11903

CLERK'S RESPONSE TO
MOTION FOR TRO

---

Michael J. Steinberg (P43085)
Kary L. Moss (P48759)
Brooke A. Merriweather-Tucker
Daniel S. Korobkin (P72842)
American Civil Liberties Union Fund of
Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313)578-6814
msteinberg@aclumich.org

MARY ELLEN GUREWITZ (P25724)
Sachs Waldman, PC
Cooperating Attorney, ACLU Fund of
Michigan
2211 East Jefferson Ave., Suite 200
Detroit, MI 48207
(313) 496-9441
Fax: (313) 965-3464
megurewitz@sachswaldman.com

JANET ANDERSON-DAVIS (P29499)
Assistant Corporation Counsel
Attorney for Clerk Cathy M. Garrett
500 Griswold, Room 1267
Detroit, Michigan 48226
(313) 224-6684
jandersn@waynecounty.com

ANN M. SHERMAN (P67762)
Denise C. Barton (P41535)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendant Johnson
P.O. Box 30736
Lansing, Michigan 48909
(517) 373-6434
bartond@michigan.gov

Attorneys for Plaintiffs Moore, Willis-
Pittman and Terry

JOHN D. PIRICH (P23204)
Andrea L. Hansen (P47358)
Honigman Miller Schwartz & Cohen
LLP
222 North Washington Square, Ste 400
Lansing, MI 48933
(517) 377-0712
jpirich@honigman.com
ahansen@honigman.com
Attorneys for Plaintiff John Conyers, Jr.

## CLERK'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

TABLE OF EXHIBITS ........................................................................................... III

INDEX OF AUTHORITIES .................................................................................... V

QUESTION PRESENTED ....................................................................................... 1

INTRODUCTION ................................................................................................... 2

COUNTER STATEMENT OF FACTS ................................................................... 3

ARGUMENT .......................................................................................................... 6

PLAINTIFFS CAN NOT MEET THE FOUR PRONG TEST
FOR A TEMPORARY RESTRAINING ORDER

I.    Plaintiffs Are Not Likely To Succeed Against Wayne County Clerk Cathy
      M. Garrett ...................................................................................................... 6

      A.    Plaintiffs' Claims Are Barred By Laches As They Knew Years Ago
            That MCL 168.544c Required Circulators Who Were Registered
            Voters Yet They Waited Years To File This Complaint ..................... 6

      B.    Plaintiff Conyers And Amicus Sheffield Have Appealed To the
            Secretary of State; Younger Abstention Mandates That This Court
            Not Issue A Temporary Restraining Order ........................................ 11

      C.    Clerk Cathy Garrett Is Entitled To Immunity ...................................... 12

      D.    Plaintiffs Moore, Pittman and Terry Have No Standing To Bring This
            Action Against The County Clerk ...................................................... 15

      E.    This Court Should Limit Its Review To Plaintiff Conyers' Claim
            And Reject Application Of The Overbreadth Doctrine ...................... 18

      F.    Purity Of Elections Mandates That This Court Not Issue A Temporary
            Restraining Order To Possibly Upset The Ballot Printing Schedule . 21

II.    Plaintiffs Will Not Suffer An Irreparable Injury If No Temporary
       Restraining Order Is Issued........................................................................ 22

III.   There Would Be No Substantial Harm To Others And No Public Interest Is
       Served If No Temporary Testraining Order Is Issued Against The County
       Clerk ....................................................................................................... 24

CONCLUSION ...................................................................................................... 26

# TABLE OF EXHIBITS

ITEM                                                                                                    TAB

Receipt for Conyers' Petitions dated April 18, 2014 ................................................. 1

Petitions Search – Project Summary dated April 30, 2014 ....................................... 2

Letter from Director of Elections dated April 30, 2014 ............................................ 3

Challenge to Conyers' Petition by Richard Jones dated April 29, 2014................... 4

Letters from Chief Deputy County Clerk dated April 30, 2014 ............................... 5

Petitions Search – Project Summary dated May 8, 2014 .......................................... 6

Letter from Detroit City Clerk dated May 1, 2014 .................................................. 7

Letter from Hamtramck City Clerk dated May 2, 2014............................................ 8

Letter from Ecorse City Clerk dated May 7, 2014................................................... 9

Staff Report dated May 9, 2014 ............................................................................. 10

Final Determination dated May 13, 2014................................................................ 11

Email from Clerk Garrett to Chris Thomas and Chris Thomas' Letter
Dated May 7, 2014 ................................................................................................. 12

Receipt for Sheffield's Petitions dated April 22, 2014 ........................................... 13

Certified List of Partisan Candidates for August 2014 Primary Election............... 14

Conyers' Appeal to Secretary of State dated May 16, 2014 (w/o exhibits)............ 15

Sheffield's Appeal to Secretary of State dated May 14, 2014 ................................ 16

Election Officials' Manual/Accreditation Study Guide, Michigan Department of
State Bureau of Elections, January 2014, Chapter 35, 2010 ................................... 17

Affidavit of Bruce Hack ........................................................................................ 18

.

## INDEX OF AUTHORITIES

**Case Law:**

*Attorney General v. Powerpick  Club Of Michigan, LLC*
287 Mich.App. 13, 783 N.W.2d 515 (2010)

*Board of Trustees of State University of New York v Fox*
492 U.S. 469, 484-485, 109 S.CT. 3028 (1989)

*Bogaert v Land*
675 F.Supp.2d 742 (W.D. Mich 2009)

*Brockett v. Spokane Arcades, Inc.*
472 U.S. 491, 105 S.Ct. 2794 (1985)

*Citizens for Tax Reform v Deters*
518 F.3d 375 (6th Cir. 2008)

*City of Pontiac Retired Employees Ass'n v. Schimmel*
 ---F.3d.---, 2014 WL 1758913 (6th Cir. 2014)

*Colorado River Water Conservation Dist. V. U.S.*
424 U.S. 800, 96 S. Ct. 1236 (1976)

*East West Resort Transp., LLC. V Sopkin*
371 F. Supp. 2d 1253 (D. Colo. 2005)

*Erard v. Johnson*
905 F.Supp.2d 782, (E.D.Mich. 2012)

*Heritage Farms, Inc. v Solebury Tp.*
671 F. 2d 743 (3d Cir. 1982)

*Hope v. Pelzer*
536 U.S. 730,  122 S.Ct. 2508 (2002)

*Kay v Austin*
621 F.2d 809, 813 (6th Cir 1980)

*Libertarian Party of Ohio v Husted*

---F.3d---, 2014, WL 1703856 (6th Cir. 2014)

*Masck v. Sports Illustrated*
2014 WL 917334  (E.D.Mich., 2014)

*Monaghan v. Sebelius*
916 F.Supp.2d 802  (E.D. Mich 2012)

*Moore v. Sims*
442 U.S. 415, 99 S. Ct. 2371 (1979)

*Nader v. Blackwell*
545 F.3d 459 (6th Cir. 2008)

*New Democratic Coalition et al., v Austin*
41 Mich App 343, 200 N.W.2d 749 (1972)

*Nimer v Litchfield Tp. Bd. Of Trustees*
707 F.3dd 699 (6th Cir. 2013)

*Northeast Ohio Coalition for Homeless and Service Employees Intern. Union, Local*
 *1199 v. Blackwell*
467 F.3d 999 (6th Cir. 2006)

*Ohio Citizen Action v City of Englewood*
671 F.3d 564 (6th Cir 2012)

*Perry v Judd*
840 F. Supp. 2d 945 (E.D. Virginia 2012)

*Savage v Gee*
665 F.3d 732, 740 (6th Cir. 2012)

*Steel Co. v. Citizens for a Better Environment*
523 U.S. 83,  118 S.Ct. 1003 (1998)

*Taylor v. Currie*
277 Mich.App. 85, 743 N.W.2d 571 (2007)

*Tobin for Governor v. Illinois State Bd. of Elections*
268 F.3d 517 (7th Cir. 2001)

*Tolan v Cotton*,
---S.Ct.---, 2014 WL 1757856 (U.S. 2014)

*Young v. Illinois State Bd. of Election*
116 F.Supp.2d 977 (N.D.Ill. 2000).

**Statutes:**
MCL 168.21
MCL 168.31
MCL 168.132
MCL 168.133
MCL 168.544c

MCL 168.552
MCL 168.711
MCL 168.713
MCL 168.714
MCL 168.759a

**Other:**
Fed R. Civ. P. 65(b)(A)
Mich. Const. 1963, art. 2, § 4.

## QUESTION PRESENTED

A plaintiff is entitled to a temporary restraining order or preliminary injunction when he is likely to prevail on the merits; he would suffer irreparable injury without an injunction; there would be substantial harm to others; and public interest is served by issuance of an injunction. Are Plaintiffs entitled to a temporary restraining order or preliminary injunction where their claims are barred by laches and Younger abstention; Plaintiffs Moore, Pittman and Terry have no standing against the County Clerk; the County Clerk is entitled to immunity; this Court should limit its review to an as-applied challenge; purity of elections precludes a restraining order; and Plaintiffs will not suffer an irreparable injury?

Plaintiffs answer yes.

Defendant Cathy M. Garrett answers no.

## INTRODUCTION

This case considers a political icon, Congressman John Conyers, whose career has spanned half a century.  Plaintiffs may argue that this career has been a casualty of MCL 168.544c(3) which states "At the time of circulation, the circulator of a petition shall be a registered elector of this state. At the time of executing the certificate of circulator, the circulator shall be registered in the city or township indicated in the certificate of circulator on the petition."

Charles Dickens in *A Tale Of Two Cities* mused "It was the best of times, it was the worst of times, it was the age of wisdom, it was the age of foolishness, it was the epoch of belief, it was the epoch of incredulity, it was the season of Light, it was the season of Darkness, it was the spring of hope, it was the winter of despair, we had everything before us, we had nothing before us, we were all going direct to Heaven, we were all going direct the other way."

Cathy M. Garrett avers that as a public official, in her wisdom, she was constrained to follow the letter of the law.  Unfortunately, the foolishness of Congressman Conyers' staffers to fail to register to vote, and the belief of the Secretary of State, the chief elections officer for the State of Michigan, that MCL 168.544c applies to the facts, may cause despair to the Conyers' camp.

John Conyers' petition was determined to have insufficient signatures; his name was not included on the official candidate list certified to the Wayne County

Election Commission. He and others bring this action alleging the relevant statute is unconstitutional. Wayne County Clerk Cathy M. Garrett was acting as a public officer following the direction of the chief election officer. This Court should abstain while the Secretary of State reviews the administrative appeals. It is telling that one cannot say that MCL 168.544c is an act that every reasonable county clerk would know is unconstitutional. Thus, Clerk Cathy M. Garrett benefits from immunity. She is a local officer applying Michigan law - sovereign immunity precludes this claim against her.

The Clerk believes that Plaintiffs' standing is questionable. Incredibly, Congressman Conyers was dilatory. This case resounds for application of wisdom. That wisdom and purity of elections mandate denial of the motion for temporary restraining order and/or preliminary injunction.

## COUNTER STATEMENT OF FACTS

In order to have his name placed on the ballot for the office of Representative in Congress for the August 5, 2014 Primary Election, Congressman Conyers needed to file a petition with 1000 valid signatures. MCL 168.132; 168.133. Cognizant of that requirement, on April 18, 2014, the Congressman filed 166 petition sheets with approximately 2000 signatures with the Office of the County Clerk. (Exhibit 1). The County Clerk, in keeping with MCL 168.552(3) canvassed the petitions to determine that statutory requirements had been met.

Because of MCL 168.5449's electoral and residency mandate, the County clerk's staff checked the qualified voter file (QVF) to learn whether the petition circulators were registered voters. QVF showed that all petition circulators were registered voters. Of the 2000 petition signatures, some were discounted for reasons not germane to this litigation, leaving 1193 valid signatures. (Exhibit 2). The Elections Director advised John Conyers, by letter dated April 30, 2014, that "the signatures filed by you for the Office of U.S. House of Representative District 13 are ...sufficient". (Exhibit 3).

Richard Jones, on April 29, 2014, filed a challenge to the petition of John Conyers "based on the non-registered voter status of the attached petition circulators". (Exhibit 4). MCL 168.552(2) allows the County Clerk to forward the challenge to the respective local clerks for investigation – thus the challenge was forwarded to the city clerks in Detroit, Hamtramck, and Ecorse, by letters dated April 30, 2014. (Exhibit 5).

In the interim, the County Clerk canvassed the petition a second time. This canvass netted 1236 sufficient signatures. (Exhibit 6). The City of Detroit Clerk advised her findings by letter dated May 1, 2014: Dameon Fentress and Cassandra Johnson were registered voters; Tiara Willis-Pittman and Daniel Pennington were registered since April 28, 2014; there was no record for Alex Canty; Chinita Terry moved on February 25, 2014 to an Oak Park address. (Exhibit 7). The City of

4

Hamtramck City Clerk advised that Jacinta McCarver was a registered voter in Hamtramck. (Exhibit 8). The City of Ecorse Clerk verified on May 7, 2014, that Davena Hogan was a registered voter in that city. (Exhibit 9).

On May 9, 2014, the County Clerk's staff issued its report finding 592 valid signatures: 644 signatures were discounted as a result of the challenge. (Exhibit 10). The County Clerk must make an official declaration of the sufficiency or insufficiency of nominating petitions for which a sworn complaint has been received. MCL 16.552(6). This Final Determination, dated May 13, 2014, found that "in accordance with the current laws and statutes of the State of Michigan, the nominating petitions filed by Congressman John Conyers, Jr. are insufficient to allow his name to appear on the August 6, 2014 Primary Ballot." (Exhibit 11).

On May 12, 2014, Ederl Edna Moore and Tiara Willis-Pittman filed a Complaint For Declaratory, Injunctive and Other Relief claiming the unconstitutionality of MCL 168.544c(3). The complaint was amended on May 15, 2014, to include Chinita Terry and John Conyers, Jr., as Plaintiffs. This was followed by Plaintiffs' Motion For Temporary Restraining Order and/or Preliminary Injunction on the same day.

It is to this motion that Wayne County Clerk Cathy M. Garrett now responds.

## ARGUMENT

## PLAINTIFFS CAN NOT MEET THE FOUR PRONG TEST
## FOR A TEMPORARY RESTRAINING ORDER

The Plaintiffs can not meet the four prong test outlined in *City of Pontiac Retired Employees Ass'n v. Schimmel* , __F.3d. __, 2014 WL 1758913 (6th Cir. 2014).

They must show:

- They are likely to prevail on the merits

- They would suffer irreparable injury without an injunction

- There would be substantial harm to others

- Public interest is served by issuance of an injunction

The factors to be weighed before issuing a TRO are the same as those considered for issuing a preliminary injunction.   *Monaghan v. Sebelius,* 916 F.Supp.2d 802,  (E.D. Mich 2012).

**I.     Plaintiffs Are Not Likely To Succeed Against Wayne County Clerk Cathy M. Garrett.**

**A.     Plaintiffs' Claims Are Barred By Laches As They Knew Years Ago That MCL 168.544c Required Circulators Who Were Registered Voters Yet They Waited     Years To File This Complaint.**

Representative John Conyers, Jr., entered the House of Representatives in 1965 and was re-elected to represent the 14th Congressional District in November of 2010, to his 24th term.   http://conyers.house.gov/index.cfm/about?p=Biography.

6

To characterize him as a seasoned politician is an understatement. This veteran politician knew as early as November 2010 that Michigan law required petition circulators to be registered voters. Since 1965 his staff has circulated petitions and gathered signatures to have the Representative's name placed on the ballot. That MCL 168.544c would apply for the August 2014 Primary Election should not have surprised Mr. Conyers.

Plaintiff Conyers could have raised these issues prior to this filing. Years before filing the Complaint, Plaintiff was on notice that the MCL 168.544c required petition circulators to be registered voters. Plaintiff could have sought recourse in a more expeditious fashion. Instead, Plaintiff Conyers chose to wait and is now barred by laches.

Generally laches is an affirmative defense which applies when the plaintiff has been dilatory and there is prejudice to the defendant. *Attorney General v. Powerpick Club Of Michigan, LLC,* 287 Mich.App. 13, 51, 783 N.W.2d 515 (2010). A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it. *Masck v. Sports Illustrated,* 2014 WL 917334, 4 (E.D.Mich., 2014).

The Court of Appeals in *New Democratic Coalition et al., v Austin*, 41 Mich App 343, 357, 200 N.W.2d 749 (1972), denied plaintiff's relief as not timely filed. The Court stated:

7

> We take judicial notice of the fact that elections require the existence of a reasonable amount of time for election officials to comply with the mechanics and complexities of our election laws. The state has a compelling interest in the orderly process of elections. **Court can reasonably endeavor to avoid unnecessarily precipitate changes that would result in immense administrative difficulties for election officials.** (Citation omitted)   In this case **to grant the relief requested by the plaintiffs would seriously strain the election machinery and endanger the election process**. (Emphasis added).

Plaintiff Conyers bears the burden of showing that he acted diligently.  It is evident that Congressman Conyers has used Michigan's petition circulation process.  Yet he brings the issue to federal court when there's very little time for the Court to address it.  He inconveniences other U.S. representative candidates and jeopardizes the ballot printing process.

The Election Commission must deliver absent voter ballots to the County Clerk at least 47 days before any election or primary election. MCL 168.713.  The County Clerk must deliver absent voter ballots to the local clerks at least 45 days before the election.  MCL 168.714.  The local clerks must begin distributing absent voter ballots to military voters not later than 45 days before the election.  MCL 168.759a(5).  Time must be allotted for ballot proofs to be printed, distributed to candidates, reviewed and corrected.  MCL 168.711.  (Exhibit 18).  Any temporary restraining order may upset the printing schedule and turn it into an attempt to get absentee ballots out on time – an action proscribed by *Perry v Judd*, 840 F. Supp. 2d 945, 954 (E.D. Virginia 2012).

Completed nominating petitions were to be filed by April 22, 2014. Amicus Horace Sheffield relied on that date; and filed 133 petition sheets containing approximately 2000 signatures. (Exhibit 13). Changing the statute now effectuates a change in the rules – a result unfair to other candidates. The County Clerk has certified the candidate list to the Election Commission. (Exhibit 14). Plaintiff Conyers' belated claim causes uncertainty in the election process.

If this Court orders that the County Clerk must not reject petition sheets circulated by unregistered voters, the Clerk must canvass those petition sheets and investigate each signature. This is a time-consuming and costly undertaking. Any order that ballots are printed which include the Congressman's name which is not upheld, would cause the Election Commission to expend a large sum to reprint ballots for the August Primary Election.

The Michigan Election law facilitates the election process by preventing stale challenges to election issues. A temporary restraining order would precipitate changes that would result in immense administrative and financial difficulties for election officials and the candidates, and would seriously strain the election machinery and endanger the election process; actions proscribed by *New Democratic Coalition, supra*. The Board is certainly prejudiced by Plaintiff Conyers' unexcused delay. *Perry v Judd, supra* 954.

9

The dilatory efforts of Plaintiff Conyers and this Court's need to apply the law on laches, when considered, weigh toward the conclusion that this matter is barred by laches. As stated by the Court of Appeals in *Kay v Austin*, 621 F.2d 809, 813 (6th Cir 1980), "Courts which have considered comparable claims have in effect balanced the interests of the parties and required that any claims against the state procedure be pressed expeditiously." Congressman Conyers has failed to use "haste and dispatch" in bringing his claim; laches should bar these proceedings notwithstanding that they involve the First Amendment. *Perry v Judd*, *Id*, 950, 953.

The Congressman may argue he suffered no injury until he was denied a place on ballot; had he brought suit earlier, the matter would not have been ripe for the Court to decide. The *Perry* Court dispensed with that argument and stated that the injury arises on the first day a plaintiff could circulate petitions:

> Here, the plaintiffs claim a loss of their First Amendment rights of free speech and association. Any injury arose when the Commonwealth limited the categories of people who could spread their message, by banning petition circulators from out-of-state. The **first day the plaintiffs were unable to communicate their message effectively was the first day they could circulate petitions**. As of that date, they could have brought in an army of out-of-state circulators to persuade people to sign petitions and, ultimately, vote for them... Yet, **the candidates waited almost half a year before seeking judicial relief.** As to the first element of laches, therefore, **the Court finds that the plaintiffs displayed an unreasonable and inexcusable lack of diligence.** (Emphasis supplied).

*Perry v Judd, Id,* 954

Plaintiff Conyers asks this Court to speculate that had Conyers been able to use non-registered circulators he would have been able to secure the requisite signatures. It is too late for this Court to do so. *Perry, supra* 954. Likewise, Plaintiffs Moore, Pittman and Terry, whose arguments are tenuous at best, should have known of MCL 168.544c. They waited too late to press their claims.

## B.   Plaintiff Conyers And Amicus Sheffield Have Appealed To the Secretary of State; Younger Abstention Mandates That This Court Not Issue A Temporary Restraining Order

Defendant County Clerk posits that abstention bars this litigation: a federal court should decline to exercise its jurisdiction so that a state agency will have the opportunity to decide the matters. *Heritage Farms, Inc. v. Solebury Tp.,* 671 F.2d 743 (3d Cir. 1982). The Federal court abstains if there are state proceedings that: (1) are currently pending; (2) involve important state interest; and (3) will provide federal plaintiff with adequate opportunity to raise his or her constitutional claims. *Nimer v. Litchfield Tp. Bd. of Trustees,* 707 F.3d 699 (6th Cir. 2013).

Mr. Jones' challenge resulted in a determination that there were insufficient signatures to justify placing Plaintiff Conyers' name on the ballot as a candidate. MCL 168.552 permits an aggrieved party to file an appeal with the secretary of state by filing a written request with the secretary of state with 3 days after the county clerk's official declaration. MCL 168.552(6).   Congressman Conyers

11

exercised that right. On May 16, 2014, an appeal was submitted to the Secretary of State on his behalf. (Exhibit 15). Candidate Horace Sheffield filed an appeal with on May 14, 2014. (Exhibit 16). The appeals concern the Congressman's ballot access – intuitively they involve an important state interest. Thus, there has been an opportunity to raise the chief constitutional claim.

Younger abstention is non-discretionary, once the three criteria are met, Younger abstention must be invoked. *East West Resort Transp., LLC. v. Sopkin, 371 F. Supp. 2d 1253 (D. Colo. 2005)*. Here, the three criteria are met. Plaintiffs in the case at bar request injunctive and declaratory relief. This Court should not provide that relief, *(Moore v. Sims*, 442 U.S. 415, 99 S. Ct. 2371 (1979)) and actually has no discretion to grant injunctive relief. *Colorado River Water Conservation Dist*. v. U. S., 424 U.S. 800, 96 S. Ct. 1236 (1976).

## C.  Clerk Cathy Garrett Is Entitled To 11th Amendment, Absolute And Qualified Immunity.

The County Clerk has absolute immunity for her determination that Plaintiff Conyers' nominating petitions did not have sufficient signatures. *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 523-26 (7th Cir. 2001) holds that board members act in the functional capacity of judges when they rule on the validity of nomination petitions, which entitles them to quasi-judicial absolute immunity. The County Clerk's role is akin to that of the Illinois State Board of Elections.

The County Clerk is shielded from qualified liability from civil damages if her actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515 (2002). Qualified immunity:

> [O]perates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful. For a constitutional right to be clearly established, **its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.** ...in the light of pre-existing law the unlawfulness must be apparent. (Internal citations omitted).

*Id, 739*

The relevant question is whether the state of the law at the time of an incident provided fair warning to the County Clerk that her alleged conduct was unconstitutional. *Tolan v Cotton*, ----S.Ct.---, 2014 WL 1757856 (U.S. 2014). Plaintiffs argue that *Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008), and *Bogaert v Land*, 675 F.Supp.2d 742 (W.D. Mich 2009) control and hold as "the circulation of petitions for candidates under M.C.L. § 168.544c(3) is entitled to just as much First Amendment protection as the circulation of petitions for ballot initiatives.." (Plaintiff's Brief In Support Of Emergency Ex-Parte Motion, p 10). That argument is too simplistic.

The *Nader* Court extensively discussed the First Amendment law as applied to recall, initiative and candidate nominating petitions. The Court concluded that the law was not clearly established:

No bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms. **Sometimes a case will arise that is sufficiently like a past case that the hard judgments are made easier. Even then, close analysis of the particular facts of the case is required**. (Emphasis added).

Given the split among the circuit courts, we cannot say that every reasonable official charged with enforcing § 3503.06 would have clearly understood that he was under an affirmative duty to cease enforcing the residency requirement.

*Nader v. Blackwell, supra*, 477.

In *Bogaert*, the Court held that district registration and residency restrictions for recall petition circulators were burdensome. MCL 168.544c states that the candidate petition circulator must be a registered elector of Michigan and the circulator must be a resident of the city. Thus, *Bogaert* did not clearly establish a rule against residency and registration requirements for candidate nominating petitions.

In *Nader*, §3403.06 advised that "No person shall be entitled…to circulate any…nominating…petition, unless the person is registered as an elector and will have resided in the county and precinct where the person is registered for at least thirty days at the time of the next election." The *Nader* Court held this statute to be unconstitutional.

Neither *Bogaert* nor *Nader* considered a state-wide registration requirement. It is reasonable for Clerk Cathy M. Garrett to believe that MCL 168.544c applies

14

in the instant matter. One cannot say that MCL 168.544c is an act that every reasonable county clerk would have known was unconstitutional.

The 11th Amendment to the United States Constitution states "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This amendment grants sovereign immunity to a state which cannot be sued, without its consent, by an individual in a federal court. *Principality of Monaco v State of Mississippi*, 292 U.S. 313, 54 S. Ct. 745 (1934). The immunity is extended to county officials acting under state authority and interpreting state law:

> The effort to sue the city and county must likewise fail. Local governmental bodies can be sued directly under § 1983 for monetary damages only where "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." Here, the Defendants acted under state law, not local laws. ...**The Eleventh Amendment** prohibits actions for monetary relief against the state, and this **prohibition applies to a local government** where it merely acts in place of the state. (Internal citations omitted) (Emphasis added)

*Keeble v. Cisneros*, 664 F.Supp. 1076 (S.D.Tex. 1987).

Clerk Cathy M. Garrett was acting under state law and under the direction of the Secretary of State. She should be immune from suit.

## D. Plaintiffs Moore, Pittman and Terry Have No Standing To Bring This Action Against The County Clerk.

In evaluating plaintiffs' likelihood of success on the merits, one must first examine the issue of standing. *Northeast Ohio Coalition for Homeless and Service Employees Intern. Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1010 (6th Cir. 2006). Plaintiffs must meet the 3-prong test for standing:

- There must be alleged, and ultimately proven, an "injury in fact"—a harm suffered by plaintiff that is concrete and actual or imminent, not conjectural or hypothetical;

- ...There must be "causation"—a fairly traceable connection between plaintiff's injury and complained-of conduct of defendant;

- ...There must be "redressability"—a likelihood that requested relief will redress alleged injury.

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103, 118 S.Ct. 1003 (1998).

The burden of establishing standing rests with the Plaintiffs. *Id.* In this instance, Plaintiffs can not prove a causal connection between any alleged harm to them and any act of Clerk Cathy M. Garrett.

Clerk Cathy M. Garrett is an elected officer who takes an oath to uphold the laws of the State of Michigan. She has only specific powers granted to her by statute. *Taylor v. Currie*, 277 Mich.App. 85, 743 N.W.2d 571 (2007). The Secretary of State is the chief elections officer for the State of Michigan and has supervisory control over local election officials. MCL 168.21. She has the authority to issue rules and regulations governing elections and to advise and direct

16

local election officials on the conduct of elections. MCL 168.31(1). Specifically, the Secretary of State promulgates rules establishing standards for state and local nominating petition signatures. MCL 168.31(2). This includes determining the validity of the registration of circulators. MCL 168.31(2)(a).

Clerk Cathy M. Garrett is sworn to uphold Michigan law. She is not a legislator and has no authority to change the law. The Michigan Secretary of State has interpreted MCL 168.544c to mean that "Petition circulators must be registered to vote in Michigan. Circulators of petitions for Local offices may be required to reside in the political jurisdiction of circulation; check local charter for additional requirements." (Exhibit 17, Page 6 of 22). Defendant Garrett interacted with the State Director of Elections prior to issuing her conclusion. (Exhibit 18).

The Wayne County Clerk could not, has not, and cannot, enforce MCL 168.544c against Plaintiffs Moore, Pittman and Terry and certainly, could not, has not, and cannot violate their First Amendment rights regarding circulation of candidate nominating petitions. There is no "fairly traceable connection" between those Plaintiffs' injuries and the complained-of conduct of Defendant County Clerk.

Plaintiffs Moore, Pittman and Terry share a possible political harm with every other voter who anticipate casting a vote for the U.S. House of Representatives race. *Miyazawa v City of Cincinnati,* 825 F. Supp. 816 (S.D. OH

1993). They will suffer no harm greater than that of any other voter that would provide them with standing. *Id*, at 818.

## E. This Court Should Limit Its Review To Plaintiff Conyers' Claim And Reject Application Of The Overbreadth Doctrine.

The overbreadth doctrine applies in First Amendment cases and allows a plaintiff to challenge a law that may legitimately proscribe plaintiff's conduct but the law is so broad that it might reach conduct that is constitutionally protected and thus, has the potential to infringe unconstitutionally on the expressive conduct of others. This doctrine allows an individual whose own speech or expressive conduct may validly be prohibited or sanctioned to challenge a statute on its face because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid. *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 105 S.Ct. 2794 (1985). The Court stated: "Indeed, if the overbreadth is substantial, the law may not be enforced against anyone, including the party before the court, until it is narrowed to reach only unprotected activity, whether by legislative action or by judicial construction or partial invalidation." *Id*, 503.

The *Brockett* Court stresses that a Court considering a First Amendment overbreadth claim need look no further than the instant litigant:

**18**

It is otherwise **where the parties challenging the statute are those who desire to engage in protected speech that the overbroad statute purports to punish,** or who seek to publish both protected and unprotected material. **There is then no want of a proper party to challenge the statute,** no concern that an attack on the statute will be unduly delayed or protected speech discouraged. The statute may forthwith be declared invalid to the extent that it reaches too far, but otherwise left intact.

*Id*, 504.

For the overbreadth doctrine to apply, the law at issue must be so broad or unclear that it will have a chilling effect and the plaintiff alleging a chill must still establish that a concrete harm occurred or is imminent. *Savage v Gee*, 665 F.3d 732, 740 (6th Cir. 2012). Here, Plaintiff Moore does not allege that she circulated petitions for Plaintiff Conyers nor that she even desires to do so. Her admiration of Plaintiff Conyers does not subject her to MCL 168.544c. Likewise, Plaintiffs Pittman and Terry are petition circulators who apparently filed false certifications. This is insufficient to prove a causal connection between any alleged injury to Plaintiffs Moore, Pittman, and Terry by Defendant County Clerk. The Wayne County Clerk cannot enforce MCL 168.544c against these Plaintiffs; and certainly has not violated these Plaintiffs' First Amendment rights regarding circulation of candidate nominating petitions. Plaintiffs Moore, Pittman and Terry can not establish a concrete harm resulting from the complained-of conduct of Defendant Cathy M. Garrett.

Generally a facial invalidation of an ordinance "is strong medicine that is not

to be casually employed." *Ohio Citizen Action v City of Englewood*, 671 F.3d 564 (6th Cir 2012). Federal courts have frowned on application of the overbreadth doctrine and facial challenges:

> Although the occasional case requires us to entertain a facial challenge in order to vindicate a party's right not to be bound by an unconstitutional statute, we neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants. Thus, **"[t]he usual judicial practice is to address an as-applied challenge before a facial challenge** ... this sequencing decreases the odds that facial attacks will be addressed unnecessarily. (Emphasis supplied. Internal citations omitted).

*Id,* 570.

The specific facts are significant in determining any allegation that a plaintiff's first amendment rights have been burdened. This was stressed by the Sixth Circuit Court of Appeals in *Citizens for Tax Reform v Deters*, 518 F.3d 375 (6th Cir. 2008): "[T]he question is fact-intensive, given the 'sliding scale' analysis outlined by the Supreme Court in *Meyer, Buckley* and other decisions." *Id* at 383. That same Court recently opined in favor of limiting review to the facts before the Court:

> A determination that a challenged disclosure requirement unconstitutionally burdens speech protected by the First Amendment on one record does not compel us to conclude the same of a different disclosure requirement on another record...there is "no substitute for the hard judgments that must be made...And **in making those hard judgments, we must look to the record before us**. (Internal citations omitted. Emphasis added).

*Libertarian Party of Ohio v Husted*, ---F.3d---, 2014 WL 1703856, p 22 (6th Cir.

2014).

**F.     Purity Of Elections Mandates That This Court Not Issue A Temporary Restraining Order To Possibly Upset The Ballot Printing Schedule.**

In conjunction with laches and the abstention doctrine, this Court should

deny the requested relief to maintain the purity of elections.   The "Purity of

Elections" Clause of the Michigan Constitution provides,

> The legislature shall enact laws to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting.

Mich. Const. 1963, art. 2, § 4.

Other candidates for U.S. Representative complied with MCL 168.544c

when circulating their petitions.   It would be inequitable to exempt Congressman

Conyers midstream from the requirement.   The purity of elections provision has

been interpreted by the Michigan Supreme Court to "unmistakably require ...

fairness and evenhandedness in the election laws of Michigan." *Erard v. Johnson*,

905 F.Supp.2d 782, (E.D.Mich. 2012).

In *Erad*, the Court considered both the Plaintiff's delayed filings and the

negative impact that granting an injunction would have on the election process;

and denied the relief because it burdened the ballot-printing process:

21

Erard has failed to show that he is entitled to this extraordinary remedy. He delayed in filing this action and in pursuing the instant motion such that the third and fourth factors weigh heavily against granting injunctive relief. *See Nader v. Blackwell,* 230 F.3d 833, 835 (6th Cir.2000) (noting that "[a] state's interest in proceeding with an election increases as time passes, decisions are made, and money is spent."). The instant motion was filed September 6, 2012, and the statement of facts supporting the motion was not filed until September 14, 2012. ... But as Defendant responds, **"[t]he ballot was certified on September 9, 2012**, in an effort to comply with the statute dictating that the ballot must be certified by the 60th day before the election." ...Further, "the **printing of more than 7,000,000 ballots at the county level commenced on September 13** or 14, 2012." *Id.* Assuming it is even possible to grant Erard the relief he seeks at this late date, **it would create a substantial burden for the state of Michigan** and would be against the public interest in maintaining the stability and integrity of the political process. Moreover, the Court agrees with the magistrate judge's assessment that Erard has failed to show a substantial likelihood of success on the merits.  (Emphasis added.  Internal citations omitted)

*Id*, 789.

Here, the County Clerk has already certified the official candidate list to the

Wayne County Election Commission. Ballot preparation has begun. The instant

action began on May 12, 2014. Congressman Conyers did not join as a party until

May 15, 2014. Any injunction could disrupt the election process.

## II.    Plaintiffs Will Not Suffer An Irreparable Injury If No Temporary Restraining Order Is Issued.

Plaintiffs claim that they would suffer irreparable harm should a temporary

restraining order not issue. Nothing can be further from the truth. Rule 65 requires

that Plaintiff show a specific fact "that immediate and irreparable injury, loss or

damage will result to the movant." Fed R. Civ. P. 65(b)(A). None of the Plaintiffs meet the Rule 65(b) requirements: They do not have immediate harm and they won't suffer irreparable harm.

Under MCL 168.552 the County Clerk may canvass the signatures on the petition sheets. Mr. Jones challenged the residency of the circulators and Defendant Garrett asked Janice Winfrey to determine the voter registration status of the challengers. Because the City Clerk determined that several of the circulators were not registered voters Defendant Garrett did not canvass the signatures on the petition sheets that were discounted. It may be that those signatures would be discounted because they are not the signatures of registered voters as required by MCL 168.544c(5)

Plaintiff Terry indicated an address on her part-petitions which was not a correct address. The attachment to Exhibit 11 references for Terry "invalid/indicated improper jurisdiction". Plaintiff Terry's declaration confirms that she did not live at the address which appeared on her part-petitions. The same notation appears for circulator Hogan.

MCL 168.544c(1) outlines the petition format. The circulator must assert that he is qualified to circulate the petition and must insert his complete residence. The petition contains a warning:

> Warning-A circulator knowingly making a false statement in the above certificate, a person not a circulator who signs as a circulator, or

23

a person who signs a name other than his or her own as circulator is guilty of a misdemeanor.

It appears that Plaintiff Terry and circulator Hogan made false assertions on the petition sheets.  MCL 168.544c(7) mandates that an individual not make a false statement in a certificate on a petition.  Those signatures may qualify to be stricken.  None of the plaintiffs have submitted evidence that all of the stricken signatures would be re-instated should they be canvassed.  The Court has ruled that this lack of evidence is fatal:

> **[T]here is no evidence that the use of non-registered voters would have resulted in Young obtaining the sufficient number of signatures required to be placed on the ballot.** Thus, even if the registration requirement was unconstitutional, the court finds that plaintiffs have not made a showing that Young is entitled to have his name placed on the ballot. (Emphasis added)

*Young v. Illinois State Bd. of Elections* 116 F.Supp.2d 977, 986 - 987 (N.D.Ill.,2000).  Like *Young*, Congressman Conyers is not entitled to have his name placed on the ballot.

## III.   There Would Be No Substantial Harm To Others And No Public Interest Is Served If No Temporary Restraining Order Is Issued Against The County Clerk.

As outlined above Plaintiffs will suffer no harm if no restraining order is issued against the County Clerk.  Rather, candidates who relied on the current reading of MCL 1168.544c will be harmed.   The Wayne County Election Commission will be harmed if the ballot printing process is disrupted and the

County can not deliver absent voter ballots on scheduled.  No public interest is impacted or harmed if no restraining order is issued.

The purpose of a preliminary injunction is to prohibit an action and protect the status quo.  *Perry v Judd*, *supra*.  The instant Plaintiffs request an injunction mandating that the Defendants re-canvass Mr. Conyers' petition and/or place Mr. Conyers' name on the ballot.  Such a request for mandatory relief invites judicial restraint: "The Fourth Circuit has viewed mandatory relied with caution explaining that it "should be granted only in those circumstances when the exigencies of the situation demand such relief." *Id*, 950 (citing *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003).   The instant situation does not demand such relief.

25

## CONCLUSION

WHEREFORE, Defendant Cathy M. Garrett respectfully requests that this

Honorable Court deny the Motion for Temporary Restraining Order And/Or

Preliminary Injunction.

Respectfully submitted,

ZENNA ELHASAN
Corporation Counsel
County of Wayne

By:   */s/ Janet Anderson-Davis*
JANET ANDERSON-DAVIS (P29499)
Assistant Corporation Counsel
Attorneys for Clerk Cathy M. Garrett
500 Griswold, Room 1267
Detroit, MI 48226
(313) 224-6684

May 20, 2014

296004