UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDNA MOORE, et al.,

      Plaintiffs,                    Case No. 14-11903
                                      Hon. Matthew F. Leitman

v.

RUTH JOHNSON, et al.,

      Defendants.
_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF

### Factual Background

Plaintiff John Conyers, Jr., ("Congressman Conyers" or "Mr. Conyers") is a member of the United States House of Representatives. He desires to seek election to another term in office. In order to qualify for placement on the August 2014 primary election ballot, Michigan law requires Congressman Conyers to submit nominating petitions to the Wayne County Clerk, Cathy Garrett ("Clerk Garrett"), containing at least 1,000 valid signatures of registered Michigan voters who reside in his congressional district. *See* MCL §§ 168.133, 168.544f. Mr. Conyers submitted nominating petitions containing more than 2,000 signatures (*see* ECF #1-1 at 1), but Clerk Garrett ultimately issued a Final Determination (*see* ECF #15-

1

2) disqualifying 1,408 of those signatures, leaving Congressman Conyers short of the 1,000 signatures he needs to be placed on the primary election ballot.

More than 600 of the signatures were disqualified pursuant to Section 544c(3) of the Michigan Election Law.  *See MCL* § 168.544c(3).  That statutory provision (hereinafter referred to as the "Registration Statute") requires (a) that "[a]t the time of circulation," a person circulating a petition to place a candidate on a primary ballot for the United States House of Representatives (and certain other offices), "shall be a registered elector of this state" and (b) that "[a]t the time of executing the certificate of circulator, the circulator shall be registered [to vote] in the city or township indicated in the certificate of circulator on the petition."[1]  *Id.*  Clerk Garrett determined that Mr. Conyers had only 592 valid signatures, not enough to qualify for placement on the primary election ballot.  (*See* ECF #15-2 at 5.)

Pursuant to Section 552(6) of the Michigan Election Law, on May 16, 2014, Mr. Conyers appealed Clerk Garrett's Final Determination to Secretary of State Ruth Johnson ("Secretary Johnson" or the "Secretary").  *See* MCL § 168.552(6).

---

[1] The term "Registration Statute" used herein refers to the following language from the statute:  "At the time of circulation, the circulator of a petition shall be a registered elector of this state.  At the time of executing the certificate of circulator, the circulator shall be registered in the city or township indicated in the certificate of circulator on the petition."  The final sentence of MCL § 168.544c(3), not reprinted here, is not at issue in this case and is not included in the definition of "Registration Statute" as used in this Order.

In a ruling dated May 23, 2014, Secretary Johnson found "that Wayne County Clerk Cathy Garrett correctly determined that Congressman Conyers' failure to submit a minimum of 1,000 valid signatures renders him ineligible to appear on the August 5, 2014 primary election ballot." (ECF #34 at 1.)   Secretary Johnson determined that Mr. Conyers submitted 455 valid signatures. (*Id*. at 7.)   She disqualified 367 otherwise valid signatures under the provision of the Registration Statute which requires that "[a]t the time of circulation," a person circulating a petition to place a candidate on a primary ballot for the United States House of Representatives (and certain other offices), "shall be a registered elector of this state." (*Id*.)   She disqualified another 398 otherwise valid signatures under the provision of the Registration Statute which provides that "[a]t the time of executing the certificate of circulator, the circulator shall be registered [to vote] in the city or township indicated in the certificate of circulator on the petition." (*Id.*)   Thus, she excluded a total of 765 signatures for violation of the Registration Statute.   Secretary Johnson specifically concluded that if the 765 signatures excluded under the Registration Statute were counted as valid, Mr. Conyers would have a total of 1,220 signatures – more than enough to qualify for placement on the ballot. (*Id.*)   Under Secretary Johnson's ruling, Mr. Conyers lacks sufficient nominating signatures and will not be placed on the primary election ballot.

## Procedural History

In this action, Mr. Conyers and the other plaintiffs (two of the petition circulators whose petitions were disqualified pursuant to the Registration Statute and one of Mr. Conyers' constituents who desires to vote for him in the primary election) argue that the Registration Statute, as applied, impermissibly infringes upon their First Amendment ballot access and associational rights. (*See Am. Comp.*, ECF #12 at ¶80.)   They also contend that the statute is overbroad and invalid on its face. (*Id.* at ¶79.)   On May 15, 2014, Plaintiffs filed a motion for temporary restraining order and/or preliminary injunction. (*See* ECF #15.)  In their motion, Plaintiffs seek entry of an order (a) enjoining Clerk Garrett and Secretary Johnson from enforcing the Registration Statute and (b) requiring Defendants to place Mr. Conyers on the August 2014 primary election ballot.  In the alternative, they ask the Court to compel Clerk Garrett and Secretary Johnson to re-examine Congressman Conyers' nominating petitions and to re-tabulate the number of valid signatures thereon without excluding any signatures pursuant to the Registration Statute. (*Id.* at 1.)

The Court held a hearing on Plaintiffs' motion on May 21, 2014.  Without objection from any party, and because all parties had notice and were able to submit briefs, the Court treated Plaintiffs' motion as one for a preliminary injunction.   The parties were also given an opportunity to present witness

4

testimony and otherwise supplement the record; they declined.   The hearing therefore consisted entirely of legal arguments by counsel, including counsel for *amici curiae* Reverend Horace Sheffield, III ("Rev. Sheffield"), a candidate for the Congressional seat currently held by Mr. Conyers, and Rev. Sheffield's campaign manager Richard Jones ("Jones") (collectively "Amici").

On May 15, 2014, the Wayne County Election Commission moved to intervene in this action.  (*See* ECF #23.)  That body represented that it "prepares the official ballots…"  (*Id.*)  The Court granted the Wayne County Election Commission's motion to intervene on May 22, 2014.  (*See* Docket.)

At the time of the hearing, Secretary Johnson had not yet issued her ruling on Mr. Conyers' appeal of Clerk Garrett's Final Determination.   Counsel for Secretary Johnson asked the Court to delay its ruling until Secretary Johnson issued her ruling, and counsel told the Court that the ruling would be issued not later than noon today.  The Court agreed to delay its ruling on the motion until after the Secretary issued her decision.  As noted above, Secretary Johnson has now ruled, and the Court will do the same.

The Court's ruling is memorialized in this order; the Court is not issuing an Opinion at this time.  Because time is of the essence, the Court believes it is essential to issue this order now – prior to issuance of a supporting Opinion – in order to provide any party who may wish to appeal as much time as possible in

which to do so and in order to maximize the time in which the United States Court of Appeals for the Sixth Circuit may have to review any possible appeal. The Court will issue an Opinion explaining in greater detail its reasoning on some of the matters discussed below as soon as possible. The Court has made completion of this supporting Opinion its highest priority.

## Analysis

Before turning to the merits of the injunction request, the Court must address the Defendants' standing and mootness arguments because those arguments concern the Court's subject-matter jurisdiction.

## Standing

Clerk Garrett and Secretary Johnson argue that Plaintiff Moore (the citizen who wants to vote for Mr. Conyers in the August primary) and Plaintiffs Willis-Pittman and Terry (the circulators whose petitions were disqualified pursuant to the Registration Statute) lack standing. Notably, neither Clerk Garrett nor Secretary Johnson contest Mr. Conyers' standing, and thus, even if the Court accepted their standing challenges, at least one plaintiff with standing to seek the requested relief would remain.[2]

---

[2]  Secretary Johnson initially argued in her filings that all Plaintiffs would lack standing to assert claims against her until she completed her review of Mr. Conyers' appeal. She has now completed the review, and thus that challenge to standing no longer exists.

The Court rejects the standing attacks.  In order to have standing, a plaintiff must demonstrate an injury in fact; causation between the injury and the defendants' conduct; and redressability – a likelihood that the requested relief will redress the alleged injury.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).    Plaintiffs Willis-Pittman and Terry (the circulators) satisfy these requirements.  They suffered an injury when the signatures they gathered were disqualified; Clerk Garrett initially inflicted the injury and Secretary Johnson continued, and declined to exercise her authority to remedy, the injury; and an injunction placing Mr. Conyers on the ballot would redress the injury.

Whether Plaintiff Moore has standing as a Conyers supporter is a closer question, but this Court concludes that she does have such standing.  She has expressed a specific and credible interest in voting for Mr. Conyers in the August primary.  That gives her standing to challenge the application of the Registration Statute that is preventing Mr. Conyers from appearing on the ballot.  *See, e.g.*, *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 128 (6th Cir. 1995); *Young v. Illinois State Board of Elections*, 116 F.Supp.2d 977, 980 (N.D. Ill. 2000) ("Baruth is a registered voter in the 64th district and, in connection with the preliminary injunction motion, has filed an affidavit stating that he wishes to vote for Young. Thus, if Young's name is stricken from the ballot, Baruth's right to support the

candidate of his choice is hindered. Thus, he has standing to challenge the constitutionality of § 10–4 which is precluding Young's inclusion on the ballot").

## Mootness

Secretary Johnson and Clerk Garrett argued that Plaintiffs' claims could become moot based on the results of Secretary Johnson's review of Mr. Conyers' appeal – if for, instance, the Secretary accepted Mr. Conyers' arguments, and he was placed on the ballot, or if she found reasons wholly apart from the Registration Statute to exclude Mr. Conyers from the ballot. The Secretary has completed her review, and her decision has not mooted Plaintiffs' claims. Mr. Conyers remains excluded from the ballot by operation of the Registration Statute.

## Injunction Factors

When a court considers a motion for a preliminary injunction, it must weigh four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction.

*Certified Restoration v. Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). Courts are generally required to balance these four factors, and none of the factors, standing alone, is a prerequisite to relief. *Golden v. Kelsey-Hayes, Co.*, 73 F.3d 648, 653 (6th Cir. 1996). However, when "a party

seeks a preliminary injunction on the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor." *Libertarian Party of Ohio v. Husted*, – F.3d –, 2014 WL 1703856 at *8 (6th Cir. May 1, 2014), *quoting Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

Plaintiffs here have shown a substantial likelihood of success. The Registration Statute is, in all material respects, indistinguishable from the statute held facially invalid by the United States Court of Appeals for the Sixth Circuit in *Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008).[3] The Sixth Circuit in *Nader* held that it was "undisputable" that the plaintiff suffered a serious limitation on his First Amendment rights – a limitation triggering application of strict scrutiny – when the statute was applied so as to disqualify signatures gathered by non-registered voters and to keep the candidate off the ballot. *Id.* at 475, 478. That is exactly what happened in this case. The Registration Statute was applied so as to

---

[3]  The statute at issue in *Nader* stated that "[n]o person shall be entitled to ... circulate any declaration of candidacy or any nominating, or recall petition, unless the person is registered as an elector and will have resided in the county and precinct where the person is registered for at least thirty days at the time of the next election."  Ohio Rev. Code § 3503.06.  That statute has both a residency and a registration requirement while the Registration Statute, on its face, says nothing about residency.  However, as Secretary Johnson conceded at the hearing on Plaintiffs' motion, only Michigan residents may register to vote in Michigan.  *See also* MCL § 168.492.  Thus, the Registration Statute effectively imposes *both* a registration requirement *and* a residency requirement and, in that regard, is indistinguishable from the statute at issue in *Nader*.

disqualify Mr. Conyers' signatures and keep him off the ballot.  *Nader* holds that this amounts to a severe burden on Mr. Conyers' First Amendment rights and requires the application of strict scrutiny.  *Id*. at 475, 478.  The reasoning of *Nader* also compels the conclusion that application of the Registration Statute severely burdened the First Amendment rights of the Plaintiffs who gathered the signatures that were disqualified.

The Registration Statute cannot survive strict scrutiny because it is not narrowly tailored to serve a compelling state interest.  The State's asserted interest is detecting and preventing election fraud.  (*See, e.g.,* ECF #27 at 25, where Secretary Johnson argues that "if strict scrutiny is required, the burden on Plaintiffs is justified by the State's compelling interest in preventing fraud.")  Requiring circulators to register, Secretary Johnson contends, helps to combat fraud because the State knows where to find a registered voter "if questions arise regarding the validity or genuineness of signatures" (*id.*), and the State has the ability to subpoena a registered voter to provide testimony, if needed, in an investigation or prosecution of election fraud.

The State's interest in combatting election fraud is compelling, but the State may protect that interest through a less restrictive means.  In particular, the State may require a petition circulator to "accept the jurisdiction of this State for the purpose of any legal proceeding or hearing initiated … that concerns a petition

10

sheet executed by the circulator" and require that the circulator agree "that legal process served on the secretary of state or a designated agent of the secretary of state has the same effect as if personally served on the circulator."   MCL § 168.544c(4), as amended by Public Act 94 of 2014, effective April 3, 2014.   In fact, that is exactly what the State did earlier this year with respect to individuals wishing to circulate petitions for referenda, constitutional amendments, and certain political offices elected statewide, including President of the United States and the United States Senate.   It eliminated the need for these petitioners to be registered voters.  *See id.*

This is a common way of combatting election fraud that federal courts have "generally looked [on] with favor."   *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 318 (4th Cir. 2013) (collecting cases).   It is far less restrictive than requiring circulators to be registered voters because it does not categorically eliminate *anyone* from the pool of possible circulators.   Because the State could plainly achieve its compelling interest in preventing election fraud through this less restrictive means, the Registration Statute cannot survive strict scrutiny.

In addition to being compelled by *Nader*, the Court's conclusions that the Registration Statute is subject to strict scrutiny and that it cannot survive such scrutiny are consistent with the "general agreement" amongst the circuit courts of

appeals that these statutes "merit the closest examination" and cannot survive that level of review. *Judd*, 718 F.3d at 316-17 (collecting cases).

At the motion hearing, Secretary Johnson argued for the first time that the Court should consider separately the constitutionality of (1) the first sentence of the Registration Statute which provides that "[a]t the time of circulation, the circulator of a petition shall be a registered elector" and (2) the second sentence which provides that "[a]t the time of executing the certificate of circulator, the circulator shall be registered in the city or township indicated in the certificate of circulator on the petition." The Secretary suggested that even if the registration requirement in the first sentence is unconstitutional, the second sentence should be upheld as a valid "disclosure" provision under *Libertarian Party of Ohio, supra*. But the second sentence – which incorporates the mandatory "shall be registered" language from the first sentence – unambiguously imposes its own substantive registration requirement; it is not a mere "disclosure" provision. Indeed, the two sentences impose *separate* registration requirements that apply at *different* times. The first sentence requires a circulator to be registered "at the time of circulation," and the second sentence requires a circulator to be registered at a different time:

namely, "at the time of executing the certificate of circulator." Both sentences *independently* require registration – a condition that is unconstitutional.[4]

As to irreparable injury, "it is well-settled that loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Libertarian Party of Ohio*, 2014 WL 1703856 at *9, *citing Connection Distrib. Co.*, 154 F.3d at 288. *See also ACLU of Kentucky v. McCreary County*, 354 F.3d 438, 445 (6th Cir. 2003) ("[W]hen reviewing a motion for a preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated"), *citing Elrod v. Burns*, 427 U.S. 347, 373 (1976). As noted above, application of the Registration Statute to Plaintiffs likely violates their First Amendment Rights. Thus Plaintiffs satisfy this requirement for an injunction.

On the issue of harm to others, when a plaintiff demonstrates "a substantial likelihood that a challenged law is unconstitutional, no substantial harm can be said to inhere in its enjoinment." *Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville*,

---

[4] The Secretary's reading of the statute – allowing the second sentence to stand alone – would lead to the anomalous result that circulators who are registered voters would have to list a correct registered address in order to have their petitions counted, but circulators who were not registered would not have to list *any* contact information at all. That cannot be what the Legislature intended when it enacted the Registration Statute. What the Secretary understandably desires is a statute that requires all circulators to list a valid address at which they may be contacted. The enactment of such a statute is a task for the Michigan Legislature, not for this Court which lacks the power to re-write state laws in a manner that does not readily comport with the intent of the Legislature.

274 F.3d 377, 400 (6th Cir. 2001), *citing Connection Distrib. Co.*, 154 F.3d at 288. Moreover, there is scant evidence that the issuance of an injunction in this case would cause harm to others.  Despite broad claims to the contrary, (*see, e.g.,* ECF #28 at 31 ("[b]allot preparations has begun")), Clerk Garrett and Secretary Johnson have submitted virtually no evidence that they (or the Wayne County Election Commission, whose motion to intervene as a defendant the Court granted on May 22, 2014 (*see* Docket)) have expended a material amount of time or resources on printing ballots or performing other substantial election preparations.  Nor have they shown that they lack sufficient time to comply with the injunction issued today.  Indeed, the claim that this injunction comes too late in the process rings quite hollow in light of the fact that Secretary Johnson was originally planning to complete her review of Mr. Conyers' appeal – the result of which could have impacted the laying out and printing of the ballots – *next week* (i.e., several days *after* this injunction is issued).  It was only after the Court pressed the Secretary to issue her decision earlier that she committed to rule by noon on May 23.  This injunction issues the same day that the Secretary renders her decision.  The Secretary has no basis to claim that the timing of this injunction creates an undue hardship on election officials.

Finally, Amici argue that the requested injunction would be unfair to Mr. Conyers' opponents.  They insist that an injunction compelling the counting of

signatures gathered by unregistered voters on behalf of Mr. Conyers would provide Mr. Conyers an advantage no other candidate had.  But Amici offer no evidence that they would have used unregistered voters to gather signatures if they had been permitted to do so.  They similarly offer no evidence that their use of registered voters disadvantaged them in any way – by, for instance, requiring them to spend more time or money gathering signatures.  They have thus failed to show that the requested relief would give Mr. Conyers an unfair advantage over them.

As to the final factor, "[i]t is always in the public interest to prevent a violation of a party's constitutional rights." *G&V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994), *citing Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 383 (1979).  Secretary Johnson counters that "midstream changes are confusing to candidates and voters alike."  (*See* ECF #27 at 28).  However, Defendants have offered no evidence of voter confusion.  The public interest favors the enjoining of the likely unconstitutional Registration Statute.

## Laches

Clerk Garrett and Amici argue that the request for injunctive relief is barred by the equitable doctrine of laches.  A party asserting laches must show: (1) a lack of diligence by the party against whom the defense is asserted and (2) prejudice to the party asserting it. *See E.E.O.C. v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 439

(6th Cir. 2006)*, citing Brown-Graves Co. v. Central States, Southeast & Southwest Areas Pension Fund,* 206 F.3d 680, 684 (6th Cir. 2000).   Neither element is satisfied here.

At least with respect to Plaintiffs Willis-Pittman and Terry, there is evidence that their failure to comply with the Registration Statute was the result of good-faith mistakes and that they believed they were in compliance with the statute. (*See* ECF #15-4 at ¶ 9-10; #15-3 at ¶ 13-17).   At the eleventh hour, Secretary Johnson submitted some evidence that suggests that Ms. Terry should have been aware of that she was not in compliance with the statute (ECF #34), but at this point, the Court is not prepared to hold that her claims are barred by laches.

Moreover, there is no evidence that Plaintiff Moore (the Conyers constituent who wishes to vote for him) knew, prior to the recent disqualification of Mr. Conyers' petitions that any signatures could be in jeopardy under the Registration Statute.   She had no reason to file this action before Mr. Conyers' disqualification from the primary election ballot.   And the Court does not believe that Mr. Conyers unreasonably delayed in filing this action.   While he may have known about the Registration Statute for some time, he had no reason to file this action until the statute was invoked against him.

Furthermore, and in any event, any delay in filing suit has not sufficiently prejudiced anyone to warrant denial of the requested relief.   As noted above, while

16

the issuance of the injunction at this point may create some pressure on election officials, there is no evidence that the terms of the injunction impose an unreasonable burden upon them.  Likewise, as noted above, Amici have failed establish that the injunction would prejudice them because they have presented no evidence that they would have done anything differently had they been allowed to rely on signatures gathered by unregistered voters – as the injunction allows Mr. Conyers to do.

*Perry v. Judd*, 840 F.Supp.2d 945 (E.D. Virginia 2012), *aff'd* 471 Fed. App'x. 219 (4th Cir. 2012), the primary laches case relied upon by Clerk Garrett and Amici, is easily distinguishable.  In that case, presidential candidate Rick Perry attempted to gather a sufficient number of signatures to secure placement on the Virginia ballot.  He failed.  He then filed a lawsuit challenging the constitutionality of a Virginia statute requiring petition circulators to be registered voters.  He sought an injunction barring enforcement of the statute and compelling Virginia election authorities to place him on the ballot.  The district court denied the motion.  The court stressed that Perry was asking the court to *assume* that he would have gathered enough signatures if had he been able to use non-registered circulators. *Perry*, 840 F.Supp.2d at 955.  The court was unwilling to assume that Perry had sufficient support among Virginia voters to earn a place on the ballot. *Id.* Here, in sharp contrast, Mr. Conyers actually gathered more than enough valid

17

signatures to secure a spot on the ballot.   Unlike in *Perry*, the Court need not speculate as to whether he has sufficient voter support to deserve a spot on the ballot.   Moreover, the election officials in *Perry* had already begun printing the ballots at the time the Fourth Circuit affirmed the denial of relief. *Perry*, 471 Fed. App'x. at 227.   That is not the case here.   Any reliance on *Perry* is misplaced, and the laches defense fails.

## Abstention

Defendants argue that this Court should abstain from adjudicating Plaintiffs' claims under the abstention doctrines of *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) and *Younger v. Harris*, 401 U.S. 37 (1971).   Abstention is not warranted under either doctrine.   A *Burford* abstention would be inappropriate because, among other things, this action does not involve a difficult question of state law and because no ruling by this Court would disrupt state efforts to establish a coherent policy on a matter of substantial public concern. *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (outlining criteria for *Burford* abstention).   Moreover, a *Burford* abstention is particularly inappropriate in cases involving facial challenges based on the First Amendment. *See Bogaert v. Land*, 675 F.Supp.2d 742, 747 (W.D. Mich. 2009) (collecting cases).

Nor is a *Younger* abstention is warranted.   This case does not fit into the *Younger* doctrine as clarified and limited by the Supreme Court in the recent decision in *Sprint Communications, Inc. v. Jacobs*, 134 S.Ct. 584 (2013).   In that case, the Supreme Court stressed that "circumstances fitting within the *Younger* doctrine … are exceptional." *Id.* at 588 (internal citation omitted).   *Younger* applies only to a request to issue an injunction in connection with a state criminal prosecution, a state "civil proceeding[] involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions," or a "state civil proceeding[] that [is] akin to [a] criminal prosecution[]."*Id* (internal citations omitted).   Plaintiffs' requested injunctive relief would not interfere with such a proceeding, so *Younger* is no bar to that relief.

## Unclean Hands

Amici argue that Plaintiffs' claims are barred by the equitable doctrine of unclean hands.   There is insufficient evidence in the record that any Plaintiff knowingly and intentionally engaged in improper conduct that would warrant application of this doctrine.   The Court chooses not to apply this equitable doctrine.

## Purity of Elections

Amici argue that granting an injunction would upset the "purity of elections" guaranteed by Article II, Section 4 of the Michigan Constitution.   (*See* ECF #25 at 26-27.)   This provision states that "[t]he legislature shall enact laws to preserve the

purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting." Const. 1963, Art. II, § 4. But Amici have presented no evidence that the requested injunction would in any way undermine the fairness and "purity" of the process such that the "purity of elections" clause would be implicated. And even if the clause were somehow at play here, it would, of course, have to give way to the First Amendment under the Supremacy Clause of the United States Constitution.

## Security Bond

Rule 65(c) provides that "[t]he court may issue a preliminary injunction ... only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "While ... the language of Rule 65(c) appears to be mandatory, and many circuits have so interpreted it, the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security." *Moltan Co. v. Eagle–Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (citing *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978), and *Urbain v. Knapp Bros. Mfg. Co.*, 217 F.2d 810, 815–16 (6th Cir. 1954)). No party here has sought a security bond, and the Court concludes that no security bond is necessary. *See Bogaert v. Land*, 572 F. Supp.

20

2d 883, 906 (W.D. Mich. 2008) (granting preliminary injunction enjoining enforcement of statute requiring recall petition circulators be registered voters and declining to require posting of security bond).

## Conclusion

The factors relevant to the issuance of injunctive relief weigh in favor of such relief here, and neither the Defendants nor Amici have offered arguments or defenses sufficient to defeat the request for relief.  As Secretary Johnson implicitly acknowledged in her ruling issued today, if the signatures excluded pursuant to the Registration Statute may not be excluded from Mr. Conyers' total – and this Court holds that they may not be – then Mr. Conyers has enough signatures to qualify for placement on the ballot.   He shall be placed on the ballot.

## Preliminary Injunction

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for a preliminary injunction, ECF #15, is **GRANTED ONLY AS FOLLOWS**.

**IT IS ORDERED THAT** the Wayne County Election Commission, having intervened in, and become a party to, this action shall place Mr. Conyers on the ballot for the August 2014 primary election.  If and to the extent that the Wayne County Election Commission requires any certification and/or determination from Secretary Johnson and/or Clerk Garrett to place Mr. Conyers on the ballot as

directed above, Secretary Johnson and/or Clerk Garrett shall provide such

certification and/or determination by not later than 5:00 p.m. on Thursday, May 29,

2014.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: May 23, 2014


I hereby certify that a copy of the foregoing document was served upon the parties
and/or counsel of record on May 23, 2014, by electronic means and/or ordinary
mail.

s/Holly A. Monda
Case Manager
(313) 234-5113

22